WERNER CHARLES HENCKE v. ST. LOUIS & HANNIBAL RAILROAD COMPANY, Appellant.—72 S. W. (2d) 798.

Division One, June 12, 1934.

*Grover C. Huston, John H. Haley* and *J. D. Hostetter* for appellant.

*Elgin T. Fuller* and *Mahan, Mahan & Fuller* for respondent.

ATWOOD, P. J.—This case falls to the writer on reassignment. It is an action for personal injuries alleged to have been sustained by plaintiff, Werner Charles Hencke, when an automobile then being driven by him was struck at a public road crossing by a train of defendant, St. Louis & Hannibal Railroad Company, carried some distance on the pilot of the engine and then dragged or thrown therefrom.

The case was submitted under the humanitarian rule and the jury returned a verdict for defendant. Thereafter the trial court sustained plaintiff's motion for a new trial on the sole ground that instruction numbered 3, given at the request of defendant, was erroneous. Defendant has appealed from the order granting a new trial and here contends, first, that the trial court erred in refusing defendant's demurrer to the evidence; second, that the giving of defendant's requested Instruction 3 was not error and that the court erred in sustaining plaintiff's motion for a new trial because of alleged error in giving this instruction.

It appears from the evidence that about half past ten o'clock on the morning of the collision in question plaintiff and a friend named Keppel were riding east in a Chevrolet coupe along a county dirt road which crossed defendant's railroad track at a flag station called Famous. At this point the railroad ran in a north and south direction over the public highway which extended east and west. For a quarter of a mile west of this crossing the public road extended over practically level land. There were, however, old ruts and mudholes in the road which made progress very difficult, and immediately next to the crossing there was an incline or elevation that emerged from a cut four or five feet in depth which began about ninety feet west of the crossing. Plaintiff's companion thus described the approach: "You couldn't see the railroad track all the way from the foot of the hill until you reach the crossing. There is about ninety feet from the railroad track looking on an angle, brush along there that stops the full view of the railroad track from about ninety feet back to about twenty-five feet of the track until you get up to the track you are passing through a deep cut probably four or five feet deep. When you get to within twenty or twenty-five feet of the crossing, I imagine, you could see a hundred feet up the track. You couldn't see a half a mile. I would say you couldn't see straight up the track until you got to within twelve or fifteen feet of the crossing."

It was a clear day in February and the sun was shining with a slight wind from the south. The sun had thawed the road, which was

muddy and slick and had not been freshly broken, and plaintiff was compelled to travel in low and second speed over this quarter of a mile. He was sitting on the left side of the coupe and the windows were open. From the crossing the track extended north for a distance of 1100 feet where it passed out of view from the crossing as it curved to the east around a hill. The railroad track was built on higher ground than the public road. The engineer sat on the right side of the cab, which was the side from which the automobile was approaching the crossing as the train was going south, and the train was proceeding at a speed of about thirty miles an hour.

At a point about sixty feet west of the crossing the road was so bad that plaintiff stopped a minute or two and debated whether or not he could get through. Both occupants of the automobile testified that while it was stopped they looked in both directions and saw no train, and that no whistle was blown and no bell was rung while they were approaching the crossing. After starting from this point plaintiff again looked in both directions but saw no train and heard no warning. While covering the remaining distance plaintiff traveled in low gear at the rate of three or four miles an hour and the condition of the road was such as to require his undivided attention. He did not again look up the track until the front wheels of his automobile were over the west rail, when he heard a shrieking whistle and saw defendant's engine fifty or sixty feet north of the crossing. He immediately stepped on the accelerator but the pilot of the engine struck his automobile and carried it south down the track for a distance of about 167 feet to a cattle chute where it was dragged off and thrown to the west of the track. The train was stopped south of the chute and plaintiff was found beneath the automobile wreckage in a badly injured condition.

The engineer driving defendant's train first testified that when he saw the automobile it was six or eight feet from the track. Later, however, he said that he saw it coming farther back but did not give a warning whistle then nor did he place his hand on the emergency brake but kept it on the throttle, and when the automobile got within six or eight feet of the crossing he then sounded the whistle and applied the emergency brake. The fireman on defendant's train testified that the emergency whistle was blown when the engine was within forty feet of the crossing. There was testimony tending to show that defendant's engineer could have seen plaintiff's automobile at all times after the train came around the hill.

The train consisted of an engine, tender, tank car and one combination passenger and baggage coach. The engine was of the standard 18 Baldwin type, and had six drive wheels. The entire train was equipped with air brakes. There was testimony that this train running thirty miles an hour under conditions then existing could be stopped in case of an emergency within fifty-five or sixty

feet, and plaintiff testified that when driving his automobile at a speed of three or four miles an hour he could stop it within one foot.

Regarding the evidence in the light most favorable to plaintiff, as must be done in ruling defendant's demurrer to the evidence, it appears that defendant's engineer saw, or by the exercise of ordinary care could have seen plaintiff continuously approaching the railroad crossing from the west over a distance of about sixty feet along the public road apparently absorbed in the task of driving, heedless of the approaching train and intent upon crossing, but gave no warning signal until the front wheels of plaintiff's automobile were over the west rail of the track. Under all the evidence it appears that a case was made for the jury under the humanitarian rule. [Smith v. St. L.-S. F. Ry. Co., 321 Mo. 105, 120, 9 S. W. (2d) 939; Willhauck v. C. R. I. & P. Ry. Co., 332 Mo. 1165, 61 S. W. (2d) 336, 338.] Where the place of danger is a public crossing the train crew must keep a lookout for persons thereon or approaching in such a manner and under such circumstances and conditions as would indicate a present intention of attempting a dangerous crossing, and make timely use of any efficient means at hand consistent with the safety of train passengers to save such persons from injury or death. In such cases trainmen may not presume that the traveler will stop short of a collision, and it is not enough for them to say that they thought he would do so. Under the evidence in this case it was for the jury to say whether there was any reasonable ground for such belief. [Ganz v. Met. St. Ry. Co. (Mo.), 220 S. W. 490, 497.]

Coming to appellant's contention that the giving of Instruction No. 3 was not erroneous, we find that this instruction was as follows:

"The Court instructs the jury that the employees in charge of the running of defendant's train were not required to attempt to stop the train until plaintiff had actually driven his automobile so near to the crossing as to be in a position of peril. And even though the plaintiff had, by reason of this failure to look and listen for the approaching train, driven his automobile so close to the crossing as to be in a position of peril, still it was not the duty of defendant's said employees to attempt to stop the train until they actually became aware of his perilous position, or until by the exercise of reasonable care they could have become aware of such perilous position."

Defendant's counsel cite a number of Missouri cases in defense of this instruction but none of them relate to accidents at public crossings where travelers have a right to be and where the traveling public must be expected. The cases cited properly state the law applicable to trespassers, licensees, and cases where the humanitarian doctrine does not apply, but a different rule applies to travelers upon a public highway crossing the track. [Ellis v. Met. St. Ry. Co., 234 Mo. 657, 672, 138 S. W. 32.] The first sentence of the above instruction suggests an improper limitation of the danger zone in a

case of this kind. It was manifestly unfair to instruct the jury in this case that "the employees in charge of the running of defendant's train were not required to attempt to stop the train until plaintiff had actually driven his automobile so near to the crossing as to be in a position of peril." The prejudicial effect of instructing in this fashion is well illustrated by the argument of defendant's counsel predicated thereon to the effect that "our common sense advises us that an automobilist is in no danger of being struck by the train until he actually gets on the crossing," etc. Of course, plaintiff would not have been hurt if his automobile had not come upon or so near the crossing that it could be struck by the train, but we have many times held that in such cases the danger zone extends over the distance traversed by plaintiff after he was observably approaching a place of imminent peril of which he was oblivious. [Koontz v. Wabash Ry. Co. (Mo. App.), 253 S. W. 413, 415; Larkin v. Wells (Mo. App.), 278 S. W. 1087, 1088; Maginnis v. Mo. Pac. Railroad, 268 Mo. 667, 678, 187 S. W. 1165.]

■ Furthermore the giving of this instruction was prejudicial because in the second sentence thereof it is assumed and stated as a fact that "plaintiff had, by reason of his failure to look and listen for the approaching train, driven his automobile so close to the crossing as to be in a position of peril." An act bespeaking negligence on the part of plaintiff was thus held up and given undue prominence before the jury, although the element of plaintiff's negligence has no place in a case submitted under the humanitarian rule. In another instruction the jury had in effect been so advised, and this method of again bringing plaintiff's negligence to the fore could only serve to confuse and mislead the jury.

For the reasons above stated the order and judgment sustaining plaintiff's motion for a new trial is affirmed and the cause remanded. All concur.