STATE OF MISSOURI at the Relation of ARTHUR HIMMELSBACH, Relator, v. WILLIAM DEE BECKER, EDWARD J. McCULLEN and J. D. HOSTETTER.—85 S. W. (2d) 420.

Court en Banc, July 10, 1935.

*Leahy, Saunders & Walther, Harold F. Hecker* and *Lyon Anderson* for relator.

*Greensfelder & Grand* and *Forrest Hemker* for respondents.

TIPTON, J.—This case comes to the writer on reassignment. It is certiorari to the St. Louis Court of Appeals. Our writ was invoked in a case decided by that court entitled Arminta Parsons v. Arthur Himmelsbach, reported in 68 S. W. (2d) 841, wherein a judgment of $3000, obtained by plaintiff in circuit court was affirmed by the Court of Appeals. The plaintiff's action was one for personal injuries. On December 8, 1932, she was riding in an automobile which was proceeding in a northerly direction on Big Bend Boulevard, near its intersection with Clayton Road, both public thoroughfares in the city of Richmond Heights, Missouri, and the automobile in which she was riding was struck and collided with by an automobile operated by the relator proceeding in an easterly direction on Clayton Road; that by reason of the collision plaintiff received certain injuries. Relator does not claim that the evidence is not sufficient to sustain the verdict, but claims that the opinion of the respondents in approving the action of the trial court in giving certain instructions and in refusing others, contravenes the controlling decision of this court. Other pertinent facts will be stated in the course of this opinion.

(1) I. "On a writ of certiorari to an appellate court, the determination of error, under our decisions, is limited to the finding of a conflict between the Court of Appeals' opinion and the latest ruling opinion of this court on the subject, either as to a general principle of law announced, or as to a ruling under a like, analogous, or similar state of facts. The purpose of certiorari is to secure uniformity in opinions and harmony in the law. [State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014.]" [State ex rel. Kroger Grocery & Baking Co. v. Haid, 323 Mo. 9, 18 S. W. (2d) 478, 1. c. 480.]

With this principle in mind, we will proceed to review the alleged conflicts. Relator contends that respondents' opinion in approving Instruction No. 3, conflicts with our previous controlling opinions. The pertinent part of this instruction is as follows:

"That the Chevrolet automobile in which plaintiff was riding was in or *approaching* a position of imminent peril of being struck by defendant's automobile, if you so find, and that the plaintiff was oblivious to her danger, if any, and that neither the plaintiff nor the driver of the said Chevrolet automobile were able to extricate her from said position of peril, and if you further find from the evidence that thereafter the defendant saw, or by the exercise of the highest degree of care could have seen the plaintiff in or approaching such position of imminent peril, if any, and that defendant could thereafter, by the exercise of the highest degree of care and with the appliances at hand, and with safety to himself and the passengers in his automobile, have sounded a warning, if you so find, or have slackened the speed of said automobile, if you so find, or have stopped said automobile before the said collision, if you so find, and that the said defendant could have thereby avoided the collision, if you so find, but negligently failed to sound any warning, or negligently failed to slacken the speed of said automobile, or negligently failed to stop said automobile, if you so find, before the said collision, if you so find, and as a direct and sole result thereof plaintiff sustained injuries, if any, then your verdict must be for the plaintiff and against the defendant, even though you may find from the evidence that the plaintiff was or was not negligent and that the driver of the Chevrolet automobile was or was not negligent.''

■ On certiorari we are limited to the facts as found in the opinion by the Court of Appeals and to the issues presented to that court. [State ex rel. Silverforb v. Smith, 43 S. W. (2d) 1054; State ex rel. Locke v. Trimble, 298 S. W. 782.] The issue presented to the respondents in regard to this instruction is that it extends the humanitarian doctrine too far, in that it put the burden on relator to act to avert the collision, even before the plaintiff entered the danger zone. ■ Respondents' opinion held that this instruction was not open to this objection, when read in connection with Instruction No. 4, which is as follows:

"You are further instructed that 'imminent peril,' as used in these instructions, does not mean remote, uncertain, contingent or avoidable danger, but means danger which is immediately impending, that admits of no time for deliberation between its appearance and the impending collision.''

We have not been cited to one of our cases where two instructions similar to instructions Nos. 3 and 4 were given. As there is no case where the facts are similar or analogous to the facts of the case at bar, we shall proceed to determine if the general principle of law announced by the respondents conflicts with our decision.

Relator claims that the opinion conflicts with our case of Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482. The point we decided

in that case was that it was not necessary to plead if the plaintiff was oblivious to his danger. In that case, we did state that: "Under this doctrine 'the position of peril' is one of the basic facts of liability; it might be denominated the chief one." The opinion then proceeds to state a formula of constitutive facts of a cause of action under the humanitarian rule. The opinion also uses this expression: "It (the humanitarian rule) 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary case for the preservation of another after seeing him in peril *or about to become imperiled,* when such injury may be averted without injury to others.' " (Italics ours.) We find no conflict between that case and opinion of respondents' rulings.

Relator also relies on the case of Shumate v. Wells, 9 S. W. (2d) 632, l. c. 635. In that case the defendant obtained a verdict and we reversed and remanded the cause because an instruction told the jury that the motorman was not required to make any effort to stop his car until the automobile was driven directly in front of or in close and dangerous proximity to it. We held that "it was the motorman's duty to act as soon as it became apparent, from the movements of the automobile, that the driver intended to cross the track ahead of the car." Certainly there is no conflict between that case and the opinion of this case.

Respondents contend that they follow our latest decision on this point, and cite several cases to sustain their position.

In Heneke v. St. Louis & H. Railroad Co., 335 Mo. 393, 72 S. W. (2d) 798, in condemning an instruction that the defendant was "not required to attempt to stop the train until plaintiff had actually driven his automobile so near to the crossing as to be in a position of peril. . . ." In that case we said: "Of course, plaintiff would not have been hurt if the automobile had not come upon or so near the crossing that it could be struck by the train, but we have many times held that in such cases the danger zone extends over the distance traversed by plaintiff after *he was observably approaching a place of imminent peril of which he was oblivious.*" (Italics ours.)

In the case of Gray v. Columbia Terminals, 331 Mo. 73, l. c. 81, 52 S. W. (2d) 809, l. c. 811, we held an instruction erroneous which imposed no duty on the defendant until plaintiff came "into the path of the tractor." In condemning that instruction we held that defendant's duty to act arose when *"Gray was in a perilous position or was unknowingly entering into a position of peril and danger."* (Italics ours.)

In the case of Martin v. Fehse, 331 Mo. 861, l. c. 866, 55 S. W. (2d) 440, we said:

"Under the humanitarian rule, the conduct of the driver must be measured from the point and time when, by the exercise of the

highest degree of care, he could have seen plaintiff, *apparently oblivious to the approach of the automobile, about to enter into a place of danger.*" (Italics ours.)

In the case of Iman v. Walter Freund Bread Co., 332 Mo. 461, l. c. 467, 58 S. W. (2d) 477, we said:

"This rule is to the effect that if the driver of this dangerous instrumentality saw, or by the exercise of the highest degree of care would have seen, this plaintiff *in or about to go into a place of imminent peril* of collision with this truck, and this truck driver then had the time and opportunity, by the prompt use of the facilities and appliances at hand, to have avoided striking plaintiff by," etc. (Italics ours.)

In the case of Allen v. Kessler, 64 S. W. (2d) 630, l. c. 632, in speaking of the duty of the defendant, we said:

"We fully agree with defendant's statement of the law to the effect that the humanitarian rule does not obtain where the evidence favorable to plaintiff does not show that defendant could have averted the injury after he saw or could have seen the plaintiff *in or about to come into a position of peril, as is held in many cases.*" (Italics ours.)

In the case of Larey v. Missouri-Kansas-Texas Ry. Co., 333 Mo. 949, 64 S. W. (2d) 681, we held an instruction that used the following language not erroneous: "That plaintiff was approaching a position of imminent peril, upon said track, if so, and the plaintiff was oblivious to his danger. . . ."

In Montague v. M. K. & I. Railroad Co., 305 Mo. 269, 264 S. W. 813, the instruction required a finding that the motorman saw, "or could have seen, the automobile aforesaid approaching a place of imminent peril," and was approved by us.

The instruction in the case at bar requires the jury to find that the automobile in which plaintiff was riding was in or approaching a position of imminent peril of being struck by defendant's automobile and that plaintiff was oblivious to her danger and that neither the plaintiff nor the driver were able to extricate her from said position of peril.

We do not believe the approval of this instruction by respondents contravenes any rulings of this court. It is to be noted that the instruction requires the plaintiff to be oblivious to her peril and that neither the plaintiff nor the driver were able to extricate her from that peril. Under the requirements of this instruction the danger zone was not extended beyond the ruling of this court by using the word "approach," and we think this is especially true when read in connection with Instruction No. 4, which in defining "imminent peril" says it "means danger which is immediately impending, that admits of no time for deliberation between its appearance and the

impending collision.'' We do not believe that these instructions authorized the jury to consider the relator's prior negligence in determining if he were negligent under the humanitarian rule, so that respondents' ruling would contravene our holding in cases of which State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798, are typical. In those cases we held that antecedent negligence has no place in a case submitted on the humanitarian theory.

Regardless of what we have just said with respect to the matter of the particular conflict alleged as the basis for certiorari herein, we think that the word ''approaching'' as used in Instruction No. 3, was practically nullified by other parts of that instruction and Instruction No. 4. We believe that instructions which omit such phrases as ''approaching imminent peril'' or ''entering into a position of peril'' would not tend to confuse the jury. The position of peril, that is the danger zone, might be a considerable distance from or very close to or in the path of the approaching vehicle depending on the particular circumstances of each case.

We find no conflict with the ruling of the respondents and our holdings.

 II. Relator next contends that the respondents erred in holding that as a matter of law the negligence of the driver of the car in which the plaintiff was riding could not be imputed to the plaintiff and in holding it was not error for the trial court to refuse instructions submitting the theory of a joint enterprise and giving instructions which ignored that theory.

The facts as disclosed in the respondents' opinion show that the plaintiff was riding in an automobile owned by her son, and that she, her son and husband were returning from visiting relatives at Lebanon, Missouri; that at the time of the collision the car in which she was riding was being driven by one F. H. Hendricks, who accompanied plaintiff and her family to Lebanon for the purpose of visiting his relatives. The respondents in their opinion say that: ''The record fails to show anywhere that plaintiff paid any part of the expenses of the trip. She was not the owner of the car, and had no ownership interest in it. There is no showing that she had any part in or any control over the operation of the automobile in which she was a passenger. There is no evidence from which it can reasonably be inferred that plaintiff and Hendricks were engaged in a joint mission and enterprise, whereby Hendricks' negligence would be imputable to plaintiff.'' Respondents held that even though a defense based upon a joint enterprise was pleaded, yet as there was no evidence to support that defense, the trial court did not commit error in refusing to instruct the jury on that theory of his defense.

The respondents stated in their opinion that the relator miscon-

ceived the evidence, that the evidence that relator claims from which the jury could draw an inference that plaintiff and Hendricks were on a joint enterprise did not apply to plaintiff but applied to plaintiff's husband.

Relator contends that the decision of the Court of Appeals conflicts with our case of Pence v. Kansas City Laundry Co., 332 Mo. 930, 59 S. W. (2d) 633. In that case the same point as to instructions was raised, but without stating in the opinion what the facts were, we said there was "substantial evidence" to support the issue of joint control.

We think the case at bar comes within the rule of law announced in the case of Corn v. Kansas City, C. C. & St. J. Ry. Co., 228 S. W. 78, l. c. 82. In that case we said:

"The argument that she and her husband were engaged in a joint enterprise in going to get their daughter at the Union Station, and therefore his negligence in driving the car, if any, was attributable to her, is untenable. If this were the law, every time a man took his family out driving in his car, he doing the driving, for their mutual pleasure, there would be such a joint enterprise as to make the husband the agent of every member of the family, and make his negligence imputable to them. None of the authorities cited by defendant sustain its contention on this point. . . . So in law the wife is merely her husband's guest and has no control over her husband, nor his automobile in which she is riding, when he is driving. His negligence is therefore not imputable to her."

Relator in his brief admits "A court is justified in withdrawing an issue from the jury's consideration only when from the evidence there can be but one reasonable conclusion drawn." That is what the respondents ruled, and we think they correctly ruled the point.

Certainly under this state of facts there can be no conflict with the cases, State v. Shelby, 333 Mo. 1036, 64 S. W. (2d) 269; O'Donnell v. Wells, 323 Mo. 1170, 21 S. W. (2d) 762, as respondents have not invaded the province of the jury.

We find no conflict with the opinion of the respondents in the case at bar and our holdings in the Pence case, supra.

It follows that our writ, heretofore issued, should be quashed. It is so ordered.

All concur.