## KURN et al. v. SMITH.
### No. 9383.

Circuit Court of Appeals, Sixth Circuit.

Feb. 19, 1943.

Cooper Turner, Jr., of Memphis, Tenn. (Canada, Russell & Turner, of Memphis, Tenn., on the brief), for appellants.

Grover N. McCormick, of Memphis, Tenn., for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

## PER CURIAM.

The sole question presented in this appeal is whether the trial court erred in overruling appellants' motions for directed verdict and for judgment non obstante veredicto in a wrongful death action.

The controversy arises out of a collision which occurred at a railroad crossing over a country road at Dillman, Missouri, between an automobile and a railway motor coach operated by appellants. Appellee's decedent, Opal L. Smith, was a passenger in the automobile which was owned and driven by one Paul Tackeberry, whose wife was also a passenger. All occupants of the automobile were killed in the collision.

Among other grounds for recovery the declaration alleged (1) common-law negligence in failing to keep a lookout, to give warning of the approach of the motor coach, and to check the speed thereof; (2) a violation of § 5213 of the Statutes of Missouri, Mo.R.S.A. § 5213, and (3) negligence based upon the last clear chance or so-called "humanitarian doctrine," in that the engineer did not apply the brakes, check his speed, give proper warning and do all within his power to stop the motor coach after he saw or could have discovered the automobile in a position of peril.

The railroad at the point of accident runs northeast and southwest and the highway runs east and west. The country is level and the track is straight for at least a quarter of a mile southeast of the crossing.

At the coroner's inquest the engineer made the following statement, which at the trial he said was correct except that the accident had occurred about 8:50 instead of 9 o'clock: "I was traveling north on train No. 812 coming into Dillman, whistled a station whistle for Dillman, which is a flag stop. Did not get any signal to stop. I sounded the crossing whistle, two longs and a short, and repeated it when nearing the crossing, and the whistle was blowing when I struck the car. I didn't see the automobile until he was 20 or 30 feet east of the tracks. He was traveling at a high rate of speed. I applied the air as quick as I could get my hand on the brake valve. The train stopped about 300 feet north of the crossing. I was going about 35 miles an hour at the time of the accident. The accident happened at 9 o'clock a.m. Thursday morning, January 30. It was raining and misty but my headlight burning. When I stopped the car was still directly in front, being under the motor."

The motor coach was due at Dillman at 8:38, and hence was at least twelve minutes late. The floor of the motor coach was some five and a half feet above the ground and the engineer was seated above the floor in a glass-enclosed cab. Appellants concede that there was nothing to obstruct the engineer's view as he was approaching the highway on the tracks from the southwest of an automobile proceeding westwardly along the road toward the crossing, as was the case here, for a quarter of a mile or more, other than a small open passenger shed or flag station, 98 feet from the center of the highway. The engineer himself says that he could have checked the speed of the train in 200 or 250 feet, and that he did not see the automobile until just after he passed the passenger shed.

The applicable portion of the Missouri statute reads as follows: Section 5213. "A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where

the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a steam whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street * * *."

The engineer testified that having received no signal from the conductor to let off any passenger, and seeing that there was no one waiting at the flag station, he turned off the air bell ringer. While he stated that it continued to ring until he passed the crossing, at no point did he say that he turned the bell ringer on again. No one except two of appellants' employees testified that they heard the bell, and other witnesses stated that they did not hear it.

The testimony as to whistling is confused and indefinite and we think the jury was entitled to find, in view of the testimony of two disinterested witnesses that the whistle was not blown except at the whistling post about a quarter of a mile from the crossing and then immediately before the collision. One of these witnesses was driving an automobile toward the crossing and did not hear the whistle although he was only about six or seven hundred feet away, with the window of his automobile open. The other lived on a farm through which the railroad ran and was about 175 feet away at the time.

Tackeberry, the driver of the automobile, was taking appellee's decedent to meet the motor coach on its return trip at Octa, a village some two miles southwest of Dillman. He had lived in this vicinity practically all of his life, and since he was planning to meet this particular motor coach at Octa instead of at Dillman, it is a fair inference that he had the schedule of the train definitely in mind and assumed that it had already gone by when he approached the crossing. The fact that the car was moving, as the engineer stated, at a high rate of speed, indicated that Tackeberry was oblivious of the approach of the motor coach, which, as the brakeman stated, was practically noiseless and was concededly traveling at least 35 miles an hour. One of the appellants' witnesses testified that the coach ran 516 feet past the crossing, carrying the automobile with it, before it came to a stop.

The District Court clearly did not err in submitting the case to the jury, both under the statutory count and under the count of common-law negligence. There is ample evidence that the bell was not rung and the whistle was not blown "at intervals" in compliance with the statute. Also the conclusion is inevitable that a lookout was not properly maintained. It is the duty of trainmen, under Missouri law, to maintain a lookout for persons approaching or on public highway grade intersections with railroads. Womack v. Missouri Pacific R. Co., 337 Mo. 1160, 1166, 88 S.W.2d 368; Hencke v. St. Louis & Hannibal R. Co., 335 Mo. 393, 397, 72 S.W.2d 798.

Nor did the court err in submitting the case to the jury under the humanitarian doctrine of Missouri, which corresponds generally to the last clear chance doctrine of other states. The automobile was traveling at a high rate of speed toward the track when the engineer first saw it. That fact, together with the circumstance that the train was late, called upon the engineer in the exercise of reasonable care to infer that Tackeberry was oblivious of the approach of the motor coach. It is argued that at the time the automobile was seen it was impossible for the engineer to prevent the accident. However, if the engineer had looked three seconds before he did look he must have seen the automobile at a point when the motor coach was about 150 feet south of the passenger shed and 250 feet from the center of the road. The motor coach was traveling at least 50 feet per second. It would then have been possible for the engineer, 250 feet away, to stop or check his speed so as to avoid the collision. The sander mechanism was rendered inoperative by the collision, but if the engineer had employed it 150 feet from the flag station it would have been working and would have made a marked difference in the distance required to stop. It is a fair inference from the engineer's own testimony that if he had been maintaining a lookout he would have seen Tackeberry proceeding toward the crossing at a high rate of speed and should reasonably have anticipated a collision unless he made an effort to stop the motor coach. Under Missouri law engineers are not allowed to presume under facts such as are shown in this record, that travelers in an automobile approaching a crossing will stop. Krause v. Pitcairn, Mo.Sup., 167 S.W.2d 74, and cases cited.

Appellants urge that the decision in the Krause case requires reversal. We cite the case for its excellent review of the Missouri decisions upon the humanitarian doctrine. So far as the instant controversy is concerned, it is sharply distinguished upon the facts. In that case Krause, who was killed, slowed down from a speed of 10 to 15 miles to 5 miles an hour as he traveled the last 100 feet up a grade to railroad crossing. At some 30 or 40 feet from the track he changed gears and increased his speed, moving anywhere from 5 to 8 miles an hour at the point of collision. He could have stopped his car within 2 or 3 feet, and in view of the extremely slow speed the engineer plainly had no reason to assume that Krause was oblivious of the approach of the train at any point where an effort to stop the train would be effective to avoid a collision.

The judgment of the District Court is affirmed.