243 S.W.2d 519 (1951)
HARRINGTON
v.
THOMPSON.
No. 42294.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*522 T. J. Cole, St. Louis, E. A. Barbour, Jr., Springfield, for appellant.
Lincoln, Lincoln, Haseltine & Forehand, Springfield, H. T. Lincoln, Turner White, Springfield, for respondent.
COIL, Commissioner.
Appeal from $9,000 judgment for plaintiff-respondent for personal injuries and property damage. The case was submitted solely on failure to warn under the humanitarian doctrine. Appellant contends that no submissible case on failure to warn was made; that the court erred in giving two instructions and in admitting certain evidence; and that the verdict is excessive. We shall refer to the parties as plaintiff and defendant.
In determining whether there was a submissible case, we shall state the evidence and reasonable inferences therefrom most favorably to plaintiff. Defendant's railroad track, running in a northeast-southwest direction (we shall refer to the track as running north and south), intersects Catalpa Street, an east and west street (a level public crossing), at a place west of the city limits of Springfield, Missouri. On July 15, 1948, a clear, dry day, at about 10:30 a. m., plaintiff, 64 years of age, drove his 1928 Model A Ford west on Catalpa and, at its intersection with defendant's tracks, was struck by defendant's southbound train. East of the east rail of the track, a distance of 71 feet, is a depression in the street or road, and 89 feet east of this depression, or 160 feet east of the east rail of the track, is the west end of a bridge. Plaintiff was traveling on Catalpa Street at about 30 m. p. h. when he came to the bridge where he slowed to 10 or 15 m. p. h. At the west end of the bridge he looked to his right and left and saw no train approaching from either direction. He proceeded to the depression which he traversed at about 10 or 12 m. p. h. and then immediately accelerated his speed to 15 m. p. h. at which speed he proceeded until his automobile was struck. The front of the train struck his automobile at the right front door. Plaintiff did not see the train except at the time of impact, heard no whistle or bell although the windows of his automobile were open and his hearing was good. He did not again look to his right or left after leaving the bridge and was not aware of the approach of the train. Plaintiff could stop his car in a distance of from 12 to 15 feet during the time he traversed the road from the depression to the crossing. Plaintiff's evidence was to the effect that no whistle or bell was sounded by the train at any time. Following the collision, plaintiff's car was 130 feet south of Catalpa on the east side of the track and plaintiff was lying about 20 feet north of his automobile.
Defendant's evidence showed that when the engine was 1400 or 1500 feet north of the Catalpa crossing, the fireman noticed a trail of dust made by an automobile proceeding west on Catalpa and continued to watch in that direction until he saw plaintiff's automobile at some point east of the bridge. After plaintiff crossed the bridge and when about 70 feet from the track, plaintiff slowed his automobile. When about 60 feet away he speeded up and continued on at a constant or increasingly accelerated speed until the time of the collision. The fireman saw plaintiff as distinguished from plaintiff's automobile when plaintiff was about 50 feet from the track and plaintiff did not look to the north. The jury could reasonably find from the fireman's testimony that he realized plaintiff intended to proceed across the tracks when plaintiff was 60 feet away. The engineer, occupying his regular position on the right or west side of the engine, did not see plaintiff or his automobile at any time and was not aware of his approach until after the impact. At approximately the time of impact, the fireman shouted to the engineer to look out, whereupon the engineer applied the brakes. Defendant's conductor testified that the train was traveling 15 m. p. h. at the time of impact and did not exceed that speed for several blocks north of Catalpa.
We have stated only that portion of defendant's evidence which was favorable to plaintiff and have ignored defendant's contradictory evidence. Other necessary evidence will be referred to in the course of the opinion.
*523 Defendant contends that there was no evidence from which a jury could reasonably find that the whistle of the locomotive could have been sounded in time to have averted the collision after a duty to act under the humanitarian doctrine arose. Defendant cites eleven cases in support of this contention. An examination of those cases, however, demonstrates that none of them aid defendant on the facts here in evidence. In so far as those cases state general applicable principles they, of course, are controlling. The difficulty with defendant's position is that when the principles of those cases are applied to the facts in evidence, it is apparent that plaintiff made a submissible case on failure to warn.
It is true, as contended by defendant, and as established by the cases it cites, that no duty existed as to plaintiff until he was in a position of imminent peril; that when he was in a position of peril is a question for the jury under all the evidence; that no duty arises as to an oblivious plaintiff until it reasonably appears or should reasonably appear that plaintiff is oblivious and intends to proceed into the path of a moving vehicle, and that the evidence must be such that the jury could reasonably find that there was time after plaintiff was in a position of imminent peril and after defendant knew or should have known of it for an effective warning to have been given.
In this case defendant's fireman admitted that when plaintiff's automobile was 60 feet east of the track he realized that plaintiff intended to go on the crossing in front of the moving train. Plaintiff, proceeding at 15 m. p. h., would require about 2.72 seconds to reach the track and he could stop his automobile in 12 feet. While there is no evidence as to the overhang of the train, even assuming that this overhang is as much as 3 feet, plaintiff in traveling 45 feet (60 feet less 15 feet) would have required about two seconds. It therefore is apparent that from the time defendant knew plaintiff was oblivious, there was a minimum interval of two seconds during which, if a warning had been sounded, plaintiff could have stopped his automobile short of the overhang of the train. This is based upon defendant's admission. The jury could reasonably find that plaintiff was in imminent peril even before he was 60 feet from the track. Without attempting to determine just where the jury could find plaintiff came into a position of imminent peril, certainly the jury could find that peril began and that defendant should have known of plaintiff's obliviousness, when plaintiff accelerated his speed after slowing for the depression in the road which, as noted, was 71 feet from the track. Under this hypothesis, plaintiff would have required about three seconds to proceed to the track, about 70 feet, or about 2½ seconds to proceed 55 feet, or to a place within 15 feet of the track, and in the remaining distance could have stopped his automobile short of the overhang. Furthermore, these calculations are based upon the assumption that the automobile would be brought to a complete stop. If does not necessarily follow that the only way a collision could have been averted was by a complete stop of the automobile short of the overhang of the train. The jury could reasonably find that, by swerving to the right or left, plaintiff could have avoided a collision even after he had traveled a portion of the 15 feet (the distance in which he could stop plus the overhang). It is clear that defendant's fireman and engineer had at least two seconds, and probably more time, in which the fireman could convey to the engineer the word "whistle" or some other appropriate instruction and the engineer could sound a warning. This court stated in Chawkley v. Wabash R. Co., 317 Mo. 782, 798, 297 S.W. 20, 24, "It is not a violent inference that the fireman could say `Whistle!' and the engineer could pull the cord within the space of a single second or less. We do not have to indulge in refinements to reach such a conclusion because trainmen are trained to act instantaneously." The evidence clearly demonstrates that plaintiff made a submissible case under the humanitarian doctrine on failure to warn. Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 88 S.W.2d 368; *524 McCall v. Thompson, 348 Mo. 795, 155 S. W.2d 161; Hencke v. St. Louis & H. R. Co. 335 Mo. 393, 72 S.W.2d 798.
On direct examination defendant's fireman testified that he did not signal the engineer in any way until the automobile was practically on the track; that he saw a trail of dust made by an automobile when the train was 1400 or 1500 feet from the crossing and that at the bottom of a hill some distance east of the bridge he saw plaintiff's car; that he saw plaintiff's car at the bridge and watched the car constantly until the time of the collision. On cross-examination counsel for plaintiff asked the fireman if, when he saw the trail of dust, he told the engineer that a car was approaching the Catalpa crossing. Defendant's counsel interposed the following objection: "We object to that; there is no duty on him to tell the engineer, away back there", which objection was overruled. Plaintiff's counsel then proceeded to ask the fireman whether he told the engineer of the approaching car when he saw it at the bottom of the hill, or whether he told the engineer when he saw the car at the bridge, all of which questions were answered in the negative; and the fireman further answered, in response to a question, that it was true that he watched the car constantly going down the hill, across the bridge and a level stretch of road, and said nothing to the engineer until approximately at the point of impact. Defendant contends that this testimony was inadmissible and that its admission was prejudicial. We think this testimony was admissible and certainly admissible against the objection interposed. Irrespective of whether there was any duty upon the fireman to inform the engineer of the approach of an automobile at any given place during its approach, the evidence was proper for the jury to consider along with all the other evidence as to when the fireman did act. Furthermore, inasmuch as the fireman had testified on direct examination that he gave no warning to the engineer until the automobile was practically on the tracks, this testimony on cross-examination was simply a repetition in different form of that same testimony. No prejudice could result from a restatement of a fact properly in evidence. Defendant cites no applicable authorities in support of his contention that the court erred in admitting this testimony. The cases cited by defendant state the general proposition that there is no duty on defendant or its agents to warn or take any other action until plaintiff is in a position of imminent peril. We agree that such is the law, but we do not agree that such principle of law made the testimony inadmissible.
Defendant contends instruction 1 is erroneous because it "indefinitely extended the field within which vigilance under the humanitarian doctrine was exacted." Defendant points to this language: "and if you find further that as Roy Harrington approached and went upon said railroad crossing ahead of said approaching train he was then in a position of imminent peril and danger and was oblivious thereto * * *." In Hilton v. Terminal R. Ass'n of St. Louis, 345 Mo. 987, 993, 137 S.W.2d 520, 522, we held an instruction erroneous which predicated liability on the approach to a position of imminent peril. The Hilton opinion followed Buehler v. Festus Mercantile Co., 343 Mo. 139, 159, 119 S.W.2d 961, 970. The law is settled that no duty on a defendant to act arises until plaintiff is actually in a position of imminent peril and that an instruction which predicates liability on failure to act while plaintiff is approaching a position of imminent peril is erroneous. Instruction 1, however, does not predicate liability on a finding that plaintiff was approaching a position of imminent peril. The word "approached" used in the phrase of the instruction heretofore quoted relates to the approach of plaintiff to the railroad crossing, not to his approach to a position of imminent peril. It requires a specific finding that as plaintiff approached and went upon the crossing he was in a position of imminent peril. Somewhat similar language was approved by this court in Stokes v. Wabash R. Co., 355 Mo. 602, 609 [7], 197 S.W.2d 304, 307[6], where we pointed out that the instruction there was not like the instruction in the Hilton case, supra. We said: "Appellant contends that the instruction is erroneous because it improperly broadened the danger zone of imminent *525 peril as it allowed recovery for respondent if he was approaching a position of imminent peril. This instruction is not open to such objection. Note its language: `* * * as the plaintiff approached and went upon the tracks aforesaid he came into and was in a position of imminent peril' and `* * * the plaintiff in such position of imminent peril and oblivious thereto.' This instruction is not similar to the instructions in the cases of Hilton v. Terminal R. Ass'n, supra, and Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W.2d 593." 197 S.W.2d 307[6].
Defendant's criticism of instruction 1 is not completely answered by the foregoing. Inherent in defendant's contention is the proposition that by use of the phrase "as Roy Harrington approached * * * said railroad crossing" the jury is permitted to find that plaintiff was in a position of imminent peril at a place and time during his approach, where and when as a matter of law he could not have been in imminent peril. Defendant relies upon Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 51. The evidence in that case, not a case in which obliviousness was relied upon, was that plaintiff, driving an automobile, approached a street intersection, made a complete stop at a stop sign, pulled into the intersecting street a distance of about 8 feet, made another stop, then proceeded across the street, during which last movement he was struck by defendant's automobile. An instruction told the jury that if it found that "while plaintiff was driving and operating his Chevrolet automobile at, upon and across the intersection (of streets designated), and that at said time and place, plaintiff was in a position of imminent peril * * * " and that defendant saw or could have seen plaintiff's automobile "entering into, upon and crossing said intersection, and in a position of imminent peril, at said time and place," etc. We held that instruction erroneous because, by ignoring plaintiff's evidence of having stopped upon entering the intersection and of having stopped again after entering it, the instruction would be construed as affirmatively placing a duty on defendant to act before plaintiff could possibly have been in any peril. We held that by the words "entering into" and "upon" the jury was instructed that plaintiff was in or could have been in a position of imminent peril from the time he entered the intersection which was directly contrary to plaintiff's evidence and that the instruction thereby contained a "misstatement as to where a position of imminent peril begins, under the facts of a case". Smithers v. Barker, supra, 111 S.W.2d loc. cit. 51.
The instruction in this case does not tell the jury that plaintiff was in a position of imminent peril at any specific place or time during his approach to the railroad crossing. It does not affirmatively place a duty on defendant to act before plaintiff was in imminent peril. It does not contain a misstatement as to where a position of imminent peril began.
Just when one, under the evidence in any particular case, comes into and is in a position of imminent peril is a question for the jury to determine. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 884, 102 S.W.2d 915, 923[13]. Thus, in any humanitarian case wherein obliviousness is relied upon to create a position of imminent peril, beginning an undetermined distance from the path of a moving instrumentality, and wherein there is evidence from which a jury may reasonably find that at some place during an approach to the path of the moving vehicle a plaintiff came into and was in a position of imminent peril, the particular place where, and time when, he did come into and was in such position, is for the jury to determine. An instruction which permits the jury to determine that time and place is a proper one so long as the instruction does not contain language, e. g., as in Smithers v. Barker, supra, which specifically directs a jury to, or makes likely that a jury will, find that plaintiff was in a position of imminent peril at a time and place when and where he could not have been; in other words, so long as the instruction does not contain a misstatement as to where a position of imminent peril begins.
*526 It is true that plaintiff's evidence showed that he approached the railroad crossing for a long distance, and it is undoubtedly further true that plaintiff was not as a matter of law in imminent peril during much of that approach. It is further true that instruction 1 does not in so many words specifically limit the jury to a consideration of only a particular portion or part of plaintiff's approach. In that respect and to that extent it may be argued, as defendant does contend, that the field within which action is required is indefinitely extended. If such a contention is valid, a plaintiff would be required, before he prepared his instruction, to determine the exact place and time prior to which he could not as a matter of law have been in a position of imminent peril. He would be required to hypothesize, e. g., in his instruction some such facts as these: "If you find that after plaintiff passed a certain large oak tree mentioned in evidence, or, if you find that when plaintiff accelerated his speed after he slowed at a certain depression in the road, he came into and was in a position of imminent peril, etc." In other words, if defendant's contention is valid, then plaintiff must assume the risk of determining the exact place or time after which a jury could reasonably find that plaintiff came into and was in imminent peril. If plaintiff is wrong in his determination and if an appellate court later determines plaintiff could not have been in imminent peril until he had progressed 25 feet beyond the large oak tree or until he had progressed 33½ feet beyond the depression in the road, then his instruction is erroneous. This is because he has specifically pointed out and directed the jury to a certain time and place during his approach and has affirmatively told the jury that it may find him in imminent peril during that particular portion of the approach. But any such contention which leads to any such result is fallacious, because it necessarily overlooks the principle of law that it is a jury question as to where and when plaintiff comes into and is in a position of imminent peril; because it necessarily overlooks the fact that instruction 1 in this case, as do most main instructions, also requires the jury to find, before it may find liability on defendant, that defendant's employees knew or should have known that plaintiff was in a position of imminent peril and that thereafter defendant, in the exercise of ordinary care, could have taken effective action to avoid the collision; because it necessarily overlooks and ignores the other instructions in the case. By the other instructions in this case, the jury was given the legal meaning of imminent peril (instruction 8); the jury was informed that, in determining whether plaintiff was oblivious to the approach of the train and whether the fireman should have known of such obliviousness, it should consider that plaintiff was required to exercise the highest degree of care, while the train crew was required to exercise only ordinary care (instruction 10); and the jury was instructed that the engineer and fireman were under no duty to act until it reasonably appeared or should have appeared that plaintiff was in imminent peril and that defendant's employees were entitled to assume that plaintiff was not oblivious and in imminent peril and that plaintiff would not proceed into the path of the moving train until it did appear, or should have appeared, to the contrary and that if, after it so appeared or should have appeared, it was then too late for defendant's employees to have taken effective action, plaintiff could not recover (instruction 11).
As we see it, it is not conceivable that a jury, under the evidence in this case and under all the instructions considered together, could have been led to believe that it could properly find that plaintiff was in a position of imminent peril at a time and place during his approach to the railroad crossing, when and where he could not as a matter of law have been in imminent peril. To say that an instruction is erroneous because there is a bare possibility that a jury will ignore the evidence, ignore all of plaintiff's main instruction except one sentence thereof, and ignore all the other instructions in a case, is tantamount, in final analysis, to saying that jurors are *527 incapable of understanding, incapable of any discernment, and wholly incapable of performing their fact-finding function. Brown v. Callicotte, Mo.Sup., 73 S.W.2d 190, 193[3]; Haynie v. Jones, 233 Mo. App. 948, 960, 127 S.W.2d 105, 111[19].
Defendant does not cite but our recent case of Cable v. Chicago, B & Q. R. Co., Mo.Sup., 236 S.W.2d 328, may lend support to the contention that an instruction which does not hypothesize the time and place after which imminent peril as a matter of law could have arisen is erroneous. In the Cable case we held an instruction erroneous which predicated liability upon a finding that "plaintiff was driving the truck mentioned in evidence along the road, and toward the railroad crossing mentioned in evidence" and that "at said time and place, defendant, through its agents, servants and employees, was operating a railroad train in a westerly direction, toward said crossing and along the railroad tracks mentioned in evidence; and if you further find and believe that at said time and place, plaintiff was in a position of imminent peril of being struck and injured by defendant's train," etc., 236 S.W.2d loc. cit. 334. The evidence in the Cable case showed that there was a dip or depression in a road 38 feet from the railroad tracks; that plaintiff slowed his truck and almost stopped it at the point of this dip, and from there proceeded up an incline to the track at a speed not in excess of 3 m.p.h. We held plaintiff made a submissible case on failure to warn in that the jury could reasonably find that plaintiff was in imminent peril from the time the truck accelerated after stopping or almost stopping at the dip, and that reasonable appearances would have caused a reasonably prudent person to conclude that plaintiff was in imminent peril beginning at that time. In concluding that the instruction there was erroneous, we said that it permitted and authorized a finding that plaintiff was in a position of imminent peril before he reached the dip or depression in the road and before he stopped or almost stopped his truck. It was the particular combination of words used, viz., "plaintiff * * * driving * * * toward the railroad crossing * * * at said time and place, plaintiff was in a position of imminent peril" which made it likely that the jury understood that it could find plaintiff was in a position of imminent peril at a time and place when he could not have been in such peril; the language was likely to be construed as an affirmative misstatement of where plaintiff's position of imminent peril began. Such holding is but an application of the principle of Smithers v. Barker, supra.
We think that the meaning of some of the language used in the Cable case should be clarified. At page 334[4] of 236 S.W. 2d, we said: "We think the instruction was prejudicially erroneous in that it submitted no proper finding of facts to guide the jury in determining the issuable fact of imminent peril or in reaching a conclusion as to when, where, and how the position of peril came into existence, or as to when the duty of the defendant under the humanitarian doctrine arose to sound a warning." The foregoing language has been construed by some to mean that an instruction in a humanitarian case is erroneous which does not by specific language hypothesize a time and place prior to which the jury may not find plaintiff in a position of imminent peril. Such a requirement tends to encroach upon the province of the jury, places an unnecessary burden upon the plaintiff, and may tend to confuse rather than to clarify. The Cable case should not be construed to require an instruction to hypothesize a time and place prior to which the jury may not find, or a time and place only after which the jury may find, plaintiff in a position of imminent peril. Newman v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 45.
We are of the opinion that the language used in the instruction in Stokes v. Wabash R. Co., supra, 355 Mo. 609, 197 S.W.2d 307, "As the plaintiff approached and went upon the tracks aforesaid he came into and was in a position of imminent peril" sufficiently presents the usual situation in this type of humanitarian case so that a jury may properly determine if, and if so, where and when plaintiff was *528 in a position of imminent peril; that it is not necessary to hypothesize a finding of a particular time and place only after which the jury may find imminent peril to exist. But the instruction must not, as in Smithers v. Barker, supra, contain language which directs the jury to, or makes it likely that a jury will, find that plaintiff was in a position of imminent peril at a time and place when and where he could not have been in such position and thus contain a misstatement as to where a position of imminent peril begins.
We note that in this case the language of the instruction was "and if you find further that as Roy Harrington approached and went upon said railroad crossing ahead of said approaching train he was then in a position of imminent peril * * *." We think the language in the instruction approved in the Stokes case, supra, 197 S.W.2d page 307, is a clearer and more accurate statement, viz., "As the plaintiff approached and went upon the tracks aforesaid he came into and was in a position of imminent peril". The words "came into" used in connection with the word "approached" eliminate even a remote chance that a jury would believe that it could properly find plaintiff was in a position of imminent peril at a time and place during the approach to the track when and where he had not as yet "come into" a position of imminent peril.
An effort to eliminate even this "remote chance" is worth while and important. Therefore, while we have held the instruction in this case not erroneous under this evidence and when considered with the other instructions in this case, nevertheless we do not approve the language of the instruction for use in other cases. The words "came into and was" should be added and the word "then" eliminated. The instruction as so changed would then be like the instruction in the Stokes case and would read: "As Roy Harrington approached and went upon the tracks, he came into and was in a position of imminent peril" etc.
Another observation concerning the language of the instruction in this case should be made. We have heretofore held that it is not error to use in instructions in this type of case phrases such as "approached and went upon the tracks" or "at and prior to the time" even where the evidence affirmatively and positively establishes that no effective action could have been taken after a plaintiff went upon the tracks or after plaintiff was in a particular position "at" a particular time. Hein v. Peabody Coal Co., 337 Mo. 626, 635[3], 85 S. W.2d 604, 609[3]; Brown v. Callicotte, supra; see also Housley v. Berberich Delivery, Inc., Mo.App., 87 S.W.2d 209, 212[6]. In cases in which all the evidence demonstrates conclusively that liability could not be imposed for failure to avert a collision after one is on the tracks, or at the time of a collision, we think the inclusion of such phrases in instructions does not tend to accomplish and produce clear and concise instructions. If language serves no useful purpose in an instruction, it should not be there. Thus such phrases in the instances mentioned should not be used. To illustrate: in this case the part of the instruction under discussion would certainly have been simpler, clearer, and more concise had it said "As Roy Harrington approached the railroad tracks, he came into and was in a position of imminent peril." This, because the evidence showed, and there was no evidence to the contrary, that defendant could have taken no action which would have averted the collision after plaintiff went upon the tracks. Why complicate the instruction by adding "and went upon"? Obviously, the converse of this proposition is true. If there is evidence in a case from which a jury may find that after a person "went upon the tracks" effective action in the exercise of proper care could have avoided a collision, then in such instances the "went upon" phrase is an important part of the instruction and properly used therein. No more effective contribution to a concerted effort to simplify and clarify instructions can be made than to eliminate from them unnecessary and inapplicable phrases and language. A ruling that an instruction is not prejudicially erroneous in a given situation is not tantamount to a ruling that the language of the particular instruction *529 is approved as a model for future use.
Defendant further attacks instruction 1 on the grounds that it is not based upon the evidence and is in conflict with instructions 11 and 12. Again defendant, to support these contentions, does not cite any cases which are comparable on the facts but simply suggests cases which reiterate the well-established rules that instructions which are not based on the evidence are erroneous, and that instructions, while they may be supplementary to and explanatory of other instructions, must not be conflicting. Plaintiff's instruction 1, after hypothesizing plaintiff's position of imminent peril and obliviousness thereto, said in part: "and that an employee of the defendant was then in charge of and operating the locomotive of said train and saw and knew, or in the exercise of ordinary care could have seen and known" of the peril and obliviousness in time thereafter to have warned "but that the operator of said train negligently failed to do so" etc. Defendant contends that because the undisputed evidence shows that it was impossible for the engineer who was then operating the train to have seen plaintiff approaching, there was no evidence to sustain the hypothesis that he could have seen and known of plaintiff's approach. We think this contention is without merit. Under the evidence there was no dispute about the fact that the engineer was on the right or west side of the engine and had no view of the area in which plaintiff's automobile was being operated. There can be no question but that the jury understood that the fireman needed to inform the engineer-operator before the engineer could sound a warning. We think the jury would not be misled because of the lack of clarity in the submission in this respect. The jury would understand that the operator of the locomotive, the engineer, could only see and know of the approach of plaintiff and of his position of imminent peril through the fireman, his co-employee, who did have the duty of lookout on his side of the engine and who was under a duty to warn the engineer, if possible, in time for the engineer to sound a signal and in time to avoid the collision. Chawkley v. Wabash R. Co., supra.
Nor is there merit in the contention that instruction 1 conflicts with instructions 11 and 12. Defendant says "the jury could have found that the operator, who, under the evidence was the engineer, was negligent and for that reason render a verdict for the respondent, even though they found under instruction No. 11 that the fireman was not negligent." Instruction 11, offered by defendant, hypothesized in several places a finding of action or lack of action on the part of the engineer or fireman. The instruction contains these phrases: "defendant's engineer or fireman cannot be charged with negligence", "you are therefore instructed that the engineer or fireman in charge of a locomotive", "if you find and believe from the evidence that as soon as it was apparent to the engineer or fireman on the train, or would have been apparent to a reasonably prudent and careful engineer or fireman under similar circumstances", "it was then too late for the engineer or fireman in the exercise of ordinary care * * * to give a warning which would have been effective," etc. It is clear that both plaintiff and defendant submitted the case on the theory of a duty, if any, on both the engineer and fireman. We cannot agree that the jury could reasonably find against defendant because of the inept wording permitting the jury to find that the operator saw the automobile. Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 404[4], 53 S.W.2d 1043, 1045 [7]. Furthermore, if the instruction may be said to be erroneous because of its inaccurate wording in the respect noted, such error was not one materially affecting the merits of the action. Sec. 512.160, Mo.R. S. 1949; Mueller v. Schien, 352 Mo. 180, 189, 176 S.W.2d 449, 453.
Defendant contends that the court erred in giving instruction 2, plaintiff's damage instruction. This contention is based upon the premise that while the petition seeks loss of prior earnings at the rate of $165 per month for ten months, the instruction, defendant says, authorized recovery for loss of earnings without limiting the *530 amount. We have carefully examined the instruction and nowhere does it mention loss of earnings. We think it is not subject to the criticism leveled against it. Defendant points to the fourth paragraph which says, in describing the things to be considered in determining the amount of damages: "the extent, if any, which he has been prevented and disabled by reason of said injuries from working and earning a livelihood; and if from the evidence you find and believe that his injuries, if any, are reasonably certain to cause him pain and anguish in the future, and reasonably certain to impair or lessen his ability to work or labor in the future, you should take said facts into consideration also." This paragraph obviously refers to the nature and extent of the injuries and not to any past loss of earnings. If, by any strained construction, it may be said to refer to loss of past earnings, then the evidence does not show a loss of earnings in excess of the amount pleaded in the petition, and any instruction therefor which permitted a recovery of loss of past earnings as shown by the evidence would not be erroneous. Hiatt v. Wabash R. Co., 334 Mo. 895, 906[4], 69 S.W.2d 627, 632[4].
Defendant contends the verdict is excessive. The trial court overruled defendant's motion for new trial which included the ground of excessiveness. We therefore review the pertinent evidence from the standpoint most favorable to plaintiff. He was 66 years of age at the time of trial with a life expectancy of 10.54 years, in excellent physical condition before the accident, operating alone a 34-acre truck farm and regularly working from daylight to dark. He was taken to a hospital for 4 or 5 days (although plaintiff remembered nothing until after he was taken home), then to his home where he was bedfast for a week or 10 days, after which he was able to move about the house with the aid of a cane and the assistance of some other person. Since, he has been able to get about with the aid of a cane. He received injuries to his head and neck and has continuously since the accident suffered headaches and a buzzing or hissing in his left ear which has affected his hearing. He received a laceration of his left arm and an injury to his left shoulder and could scarcely use his arm and shoulder for some time and had, at the time of trial, little use of his arm in performing farm labor. Plaintiff is left-handed. He sustained injury to the left side of his back just above the pelvis which pains him when he attempts to do any work. Both of his knees were black and blue and his left knee has been weakened. He is unable to sleep as well as formerly because of pain in his left side and shoulder which wakes him. He sustained a cut in the lid of the left eye. He is not able to do one half as much work as before the accident.
Dr. Farthing, who examined plaintiff on November 18, 1949, and several times thereafter, diagnosed plaintiff's injuries as: a torn tendon cuff of the left shoulder; an injury to the vertebrae in his lumbar spine, being evidenced by a marked narrowing between the fourth and fifth lumbar vertebrae and the narrowing of other intervertebral spaces (which ones are not clearly indicated by the evidence); an aggravation of a pre-existing arthritic condition in the lumbar spine; lacerations of the scalp, right arm, and right thigh, with a scar on the back of the right arm, one on the right temple region, and one on the outer surface of the right thigh ringed with hardened tissue; a possible cerebral concussion; and an injury to the cochlear portion of the auditory nerve. Dr. Farthing further testified that the torn tendon cuff had resulted in pain and inability to elevate the arm more than 20° from a hanging position at plaintiff's side; that the injury to the lumbar spine resulted in considerable pain with limitation of motion on forward bending; that the subjective symptoms of buzzing in the right ear and dizziness and unsteadiness caused him to believe that there had been an injury to the auditory nerve; that the plaintiff's hearing has been diminished from normal by about 25 per cent.
Dr. Farthing was of the opinion that the injuries to plaintiff's left arm and shoulder, the limitation of motion in forward bending, and the pain he suffers in the lumbar *531 region of his back and in the arm and shoulder are permanent conditions. He was of the opinion that the plaintiff is totally disabled in so far as the kind of manual farm labor previously performed is concerned, and is about 75 per cent disabled for light labor. The doctor's opinion was based largely upon the inability of plaintiff, a left-handed person, to use his left arm.
Plaintiff's automobile was damaged to the extent of $375 and his medical, hospital, and other expenses were $292.
Defendant cites, in support of his contention that the verdict is excessive, Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S.W.2d 690, and Lang v. St. Louis Public Service Co., Mo.App., 204 S.W.2d 504.
In the Tash case, decided in 1934, judgment for $8,000 was reduced to $5,000. In the Lang case, the appellate court decided that the trial court did not abuse its discretion in granting a new trial on the ground of excessiveness where the jury returned a verdict for $7,500. We have examined these opinions and, without here setting forth extended comparisons, we have concluded that, having in mind the date of the Tash opinion and that the Lang case decided only that the trial court did not abuse its discretion, and comparing the injuries to plaintiffs in those cases with the injuries to plaintiff in this case, the two cases do not show excessiveness in this case. Considering plaintiff's evidence as to injuries and damages from the standpoint most favorable to him, we cannot say that the $9,000 judgment approved by the trial court is excessive. Schaller v. St. Louis Public Service Co., Mo.Sup., 223 S.W.2d 409, 411; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 51, 159 S.W.2d 589, 596.
The judgment is affirmed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.