STATE OF MISSOURI at the relation of MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and ROBERT M. REYNOLDS, Judges of the Kansas City Court of Appeals.—124 S. W. (2d) 1141.

Court en Banc, February 7, 1939.

962

*Carl S. Hoffman, Frank J. Rogers* and *Cooper, Neel, Kemp & Sutherland* for relator.

*Thomas W. Skidmore, Walter A. Raymond* and *Fenton Hume* for respondents.

TIPTON, C. J.—Certiorari to the judges of the Kansas City Court of Appeals, bringing up the record in the case of Hamarstrom v. Missouri-Kansas-Texas Railroad Co., reported in 116 S. W. (2d) 280. That court affirmed the circuit court's judgment, which had approved the action of the Missouri Workmen's Compensation Commission in awarding compensation in favor of Mary L. Hamarstrom against the relator for the death of her husband. The commission found against the relator's contention that the deceased was engaged in interstate transportation at the time he received the injuries from which he died.

The essential facts found by the respondents are as follows: that the relator is an interstate carrier by railroad; that its line runs into Kansas City, Missouri, only, from the State of Kansas; that its freight offices and team tracks are located at Fourteenth and Wyoming Streets in Kansas City, Missouri; that its switch yards and office yard are located at Glen Park, Kansas; that deceased was employed by relator at its freight house in Kansas City, Missouri; that his duties required that he report at the office of relator in Glen Park, Kansas, every night at midnight for the purpose of securing certain reports and tabulated information which had been prepared by the yard clerks during the preceding 24-hour period, records of incoming and outgoing trains, all mail, telegrams, and other office communications for relator's Missouri office, and take them there for use by him at the latter office in making up a daily interchange report required of the relator under the rules of the Interstate Commerce Commission; that on May 10, 1934, the deceased reported at relator's Kansas office at about 11:45 P. M. and secured the reports which had accumulated for the preceding 24-hour period, also a wheel report of one of the relator's trains which had left its yards en route to Parsons, Kansas, at 7:25 P. M., and a telegram relating to the diversion of a car of oranges; that he then started on his way with the reports and telegram to relator's Missouri office, and, while waiting for a street car, he was struck and injured by a passing automobile, driven by a third party having no connection with relator; that he later died from the injuries; that the records deceased was carrying were to be used in preparing the daily interchange report which was later to be sent to the interchange bureau and checked against the reports of other carriers; that it was the duty of the deceased to prepare from the reports and other papers obtained from the Kansas office the daily interchange report, work on which he was required to begin as soon as he arrived at the Missouri office, and which took from three to three and one-half hours; that this report contained a record of all cars delivered by relator to connecting carriers for the 24-hour period ending at midnight, the destination of cars, their contents, seal numbers, the railroad to which each car belonged, the time of delivery to a connecting carrier, and the place of delivery; that

when this report was completed a copy was delivered to the chief interchange inspector for the Kansas City Terminal Railway Company, though whose office an interchange checking bureau office was maintained; that these reports were also required to be delivered to the forwarding line to be checked against its copy to determine the correctness and then to be checked back against the interchange report; that these copies were required to be checked one against the other at the interchange bureau, and verified, and any mistakes therein corrected; that after verification, one was filed with the interchange bureau, one was delivered to the receiving carrier, one was filed in the local office at Kansas City, and one was mailed to the car accountant of each carrier; that the information contained in the interchange report was a record of the movement between railroads and was used as a basis for determining the amount to be paid to other lines for car rental, and the amount to be received from other lines for rental of the relator's equipment; that this information also enabled the carrier to locate its cars and to locate foreign cars upon its line, and to determine the places of delivery of such cars—that is, the points to which the foreign cars were to be returned; and that it was the duty of the receiving carrier to return foreign equipment to the place where received without delay.

The sole question decided by the respondents was whether the deceased was, at the time of his injuries, engaged in interstate commerce or work so closely related to interstate commerce as to be practically a part thereof, within the meaning of the Federal Employers' Liability Act, thereby bringing him under the provisions of that act. If so, the Workmen's Compensation Commission was without jurisdiction; if not, its award was proper. The respondents held that the Workmen's Compensation Commission had jurisdiction to make the award.

" 'On a writ of certiorari to an appellate court, the determination of error, under our decisions, is limited to the finding of a conflict between the Court of Appeals' opinion and the latest ruling opinion of this court on the subject, either as to a general principle of law announced, or as to a ruling under a like, analogous, or similar state of facts. The purpose of certiorari is to secure uniformity in opinions and harmony in the law. [State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014.]' [State ex rel. Kroger Grocery & Baking Co. v. Haid et al.; 323 Mo. 9, 18 S. W. (2d) 478.]'" [State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 85 S. W. (2d) 420, l. c. 421.] "Nor is it material what we may think of the question involved as an original proposition. Unless the ruling of the Court of Appeals conflicts with a previous ruling of this court upon equivalent or similar facts, we are not authorized to quash its opinion." [State ex rel. St. Louis-San Francisco Ry. Co. v. Haid, 327 Mo. 217, 37 S. W. (2d) 437, l. c. 438.]

■ With these principles in mind, we will proceed to review the alleged conflicts. The relator's first contention is that the respondents' opinion conflicts with out decisions "in holding that damages for injuries received by an employee of an interstate carrier by railroad, who is injured while engaged in interstate transportation, may be recovered under State law, and that before the Federal Employers' Liability Act is applicable, such employee must be engaged in interstate transportation by railroad at the very time of injury."

It is to be remembered that, at the time the deceased was injured, he was carrying on his person reports from the relator's office in Kansas to its Missouri office. He was making this trip on a street car, not owned or operated by the relator. While waiting for the street car, he was hit by a passing automobile operated by a third party. The respondents ruled that the Federal Act applied only to railroads, but recognized the rule that a railroad "might employ as part of its system of transportation other instrumentalities than its own trains, such as floats, tugboats and the like; and that an employee engaged in interstate commerce injured while upon one of such instrumentalities being so utilized comes within the act."

In ruling this point, the respondents said:

"It is evident that, at the time of his injury, the deceased, Hamarstrom, however he might otherwise have been engaged, unless he was to be considered as a mere instrumentality used by the defendant railroad as a part of its transportation system, was not engaged in transportation by railroad. That he could be so considered a mere instrumentality in use as a part of the defendant's transportation system does not appear to be within the contemplation of the Federal Act. The Federal Act did not, under the evidence, become applicable."

The first case cited by the relator is Harris v. Mo. Pac. Railroad Co., 342 Mo. 330, 114 S. W. (2d) 988. In that case, the plaintiff was injured while repairing a mowing machine which was used to cut weeds along an interstate track; it was also used to transport the operating crew from place to place in different states. We held that the plaintiff was not engaged in interstate transportation at the time of his injury for the reason that in order for repair work to be under the Federal Act, the thing repaired must itself be one that is directly used in interstate transportatioin.

In Sheehan v. Terminal Railroad Assn. of St. Louis, 336 Mo. 709, 81 S. W. (2d) 305, we held that an elevator at a depot, used to move both intrastate and interstate commerce, is an instrumentality so closely related to interstate commerce as to be a part thereof.

In Aldridge v. Wab. Ry. Co., 335 Mo. 588, 73 S. W. (2d) 401, we ruled that plaintiff was not engaged in interstate transportation when he was injured while unloading ties on July 25, the car having arrived in the yards on July 9 and "spotted for unloading" on July

24. The car had lost its interstate commerce status and the ties had not been definitely assigned to the place where they were to be used to repair the track. Therefore, he was not engaged in interstate commerce at the time of his injury.

In Kepner v. Cleveland, C., C. & St. L. Ry. Co., 322 Mo. 299, 15 S. W. (2d) 825, we held that where an employee was injured while repairing a turntable located in front of a locomotive repair shop, which turntable was permanently used for turning locomotives into the shop in the course of movement of disabled engines from other states for the purpose of repairs, to be within the Federal Act.

In Milburn v. Chicago, M. & St. P. Railroad Co., 331 Mo. 1171, 56 S. W. (2d) 80, the plaintiff was injured while building a fire in a bunk car on Sunday for the purpose of washing his clothes. He was engaged when working in repairing an interstate track, but at the time of the injury he was not working, although he was subject to call to work on the track in case of an emergency. We held that he was not within the Federal Act.

In Thompson v. Wab. Ry. Co., 262 Mo. 468, 171 S. W. 364, we held the hauling by an interstate railroad of a train of empty freight cars from a point in one State to a point in another State to be interstate commerce, and an employee injured while working on such train to be within the Federal Act.

All of the above cited cases, as does the ruling of respondents in the case at bar, recognize the rule that the ''true test of employment in such commerce in the sense intended is, was the employee, at the time of injury, engaged in interstate transportation, or work so closely related to it as to be practically a part of it?'' None of the above cases hold that an employee crossing a State line is himself an instrumentality of interstate commerce. Therefore, there can be no conflict between the ruling of the respondents on this point and our rulings in the above cited cases.

The relator next contends that the respondents' opinion conflicts with our rulings ''in holding that a railroad employee engaged in work, all of which relates to cars moving in interstate transportation, and which work is directly connected therewith, and is necessarily a direct incident thereto, because its performance is mandatory under the rules of the Interstate Commerce Commission, and its performance is necessary for the carrier to efficiently carry on the interstate transportation to which it relates, is not engaged in work so closely related to interstate transportaion as to be a part thereof.''

The respondents ruled that at the time the deceased was injured, he was not engaged in work so closely related to interstate transportation as to be a part thereof. Their ruling was based on the fact that ''the evidence shows that every car coming into or going out of the defendant's yards during the 24-hour period ending at

970

midnight, May 10, was moved in interstate commerce and that the mail carried by the employee at the time of injury was a record of those movements. The employee at the time of the injury was on his way from the defendant's yard in Kansas to the defendant's freight office in Missouri, carrying the railroad mail of his employer, which was a record of past events and had no direct connection with transportation in interstate commerce within the meaning of the Federal Act.''

Had the deceased reached the relator's Missouri office, his first duty would have been to prepare an interchange report from the reports that he obtained at the Kansas office. The time required to prepare such report was from three to three and one-half hours. The original and copies of the interchange report were sent to the chief interchange inspector for the Kansas City Terminal Railway Company ''whose office acts as an interchange checking bureau.'' The respondents found that the main purpose of making this interchange report was to keep a record of the movement between railroads of cars in order that per diem payments can be accurately checked against the interchange report to determine their correctness. ''He did not have anything to do with the moving of any such cars from one point to another. His work was merely for the convenience of those whose duty it was to cause such cars to be moved or transported and returned to the points at which they were delivered or received.''

The relator first cites the case of Crecelius v. Chicago, M. & St. P. Ry. Co., 274 Mo. 671, 205 S. W. 181, and second appeal of the same case, 284 Mo. 26, 223 S. W. 413. In that case we said: ''The ultimate facts of this case then, as the trial jury was warranted in finding them from the substantial evidence adduced, ran thus: Deceased, on the day he was killed was working as a timekeeper for a gang of men engaged in repairing the main track of an interstate railroad . . .'' He was killed while on the road to send a telegraphic report of such work. We ruled that timekeeping for workmen engaged in repairing the track was essentially a part of such repair work and the deceased was, therefore, employed in the repair of the defendant's track used in interstate commerce and within the protection of the Federal Act. In that case, the timekeeper was a member of the crew which was repairing an interstate track and was injured in the performance of his duties. In the case at bar, the deceased had to prepare an interchange report from the records he was carrying at the time of the injury and send it to an employee of the Kansas City Terminal who, in turn, would send a copy to the connecting carrier to check against the cars it had received from the relator. At still another time and place, the car accountant would file this report and make it a part of his record. The deceased was engaged in a series of separate tasks, not in a minor task

that was essentially a part of interstate transportation. The respondents found that the records the deceased was carrying were records of past events and had no direct connection with transportation in interstate commerce within the meaning of the Federal Act. We find no conflict between the decision of the respondents and the above case.

In the case of McNatt v. Wabash Ry. Co., 341 Mo. 516, 108 S. W. (2d) 33, the plaintiff was injured while switching intrastate cars back on the switch track. It was essential to move these cars so that two interstate cars could be put in the train on which plaintiff was working. We held plaintiff was under the Federal Act for the reason that it is the character of the work the employee is doing at the time of the injury which determines whether the work is within the Federal Act, and not the intention as to future movements. However, present movement of intrastate cars may be so closely related to interstate transportation as to make such movement one in direct furtherance of interstate transportation. There is no conflict between the ruling of that case and the decision of respondents.

In Sailor v. Mo. Pac. Railroad Co., 322 Mo. 396, 18 S. W. (2d) 82, the deceased employee was injured while unloading ties for future use in replacing old ties. We held that the deceased was not engaged in interstate commerce. Again, there is no conflict.

The relator next contends that the respondents' opinion conflicts "with controlling decisions of this court in holding that the interstate status of a car terminates when delivered at the destination of the consignment, even though it was the duty of the carrier to return the car to the point where received and which return trip would be an interstate journey."

The facts found on this point by the respondents are as follows: "The information contained in the interchange report also enabled the carrier to locate its cars and to locate foreign cars upon its line and to determine the places of delivery of such cars—that is, the points to which the foreign cars were to be returned. It contained billing references and information on all of the cars which had to be recorded and a record made thereof. A foreign car (that is, a car belonging to some other railroad) when received had two destinations. The first was the destination of the lading; the second was the home of the car. . . ." The respondents held that "where a car reached its destination and had been delivered in accordance with the consignment, its interstate status terminated." There is no fact stated in respondents' opinion that would show where any particular car mentioned in the records that deceased was carrying would be returned to its owner, or, if the owner had a line in Missouri, that it would not be returned to it in this State. For instance, a car in question may have been owned by the Wabash Railroad and

delivered to the Burlington Railroad; it could easily have been returned to its owner without leaving this State.

The relator claims the ruling of respondents on this point contravenes our decision in the case of Thompson v. Wabash Ry. Co., supra. In that case, the injured employee was the fireman of a train carrying empty cars from Iowa into Missouri. It was the contention of the plaintiff that, notwithstanding the fact that the train crossed the Missouri State line, he was not engaged in interstate commerce because no passengers or articles of commerce were being tranported. That case does not conflict with the decision of the respondents for the reason that at the very time the employee was injured, he was engaged in moving cars across the State line, while in the case at bar, there is no showing that any of the cars shown on the interchange report would ever cross the State line, or, if so, when they would be so moved.

The relator also relies upon the case of La Lone v. St. Louis Merchants' Bridge Terminal Ry. Co., 316 Mo. 835, 293 S. W. 379. In that case, a switchman was engaged in moving thirty-four empty cars to a freight house where the cars were to be spotted for loading. At least four of the cars were definitely assigned for interstate freight and immediately moved therefrom in interstate commerce. We held that this movement was a preparatory movement in aid of, a necessary incident to, for the purpose of furthering, and so closely connected with the movement of these cars when loaded, with interstate freight as to be a question for the jury whether the injured employee was under the Federal Act. The facts in that case are vastly different from the facts in the case at bar; therefore, there can be no conflict.

The case of Trowbridge v. K. C. & W. B. Ry. Co., 192 Mo. App. 52, 179 S. W. 777, is an opinion of the Court of Appeals and, therefore, is not reviewable in this proceedings.

In Kepner v. Cleveland, C., C. & St. L. Ry. Co., supra, a dead engine was being moved from one State to an engine house located in another State for repairs. Immediately prior to being placed in this engine house, the engine was left on the switch track as it was necessary to repair the turntable which was used to convey all engines into the shop. We held that the destination of the engine was the repair shop, and the fact that it was stopped on the switch track so that the turntable could be repaired did not cause it to lose its interstate status. In that case, the engine's movement to the repair shop was only temporarily halted as it was to be immediately moved into the shop, while in this case the next movement of the cars shown on the interchange report might or might not have been in interstate commerce. So, there is no conflict with that case.

The last alleged conflict is stated by the relator as follows: "The opinion of the Court of Appeals conflicts with controlling de-

cisions of this court in holding that the question, as to whether or not a railroad employee comes within the scope of the Federal Employers' Liability Act, depends on whether or not the work in which he is engaged at the time of the injury is necessary to the movement of cars in interstate commerce.''

The relator has misconceived the respondents' ruling. After quoting from 2 Roberts on Federal Liability of Carriers (2 Ed.), page 1371, the respondents said:

''The author sets forth the test as follows: '(1) Was the employee participating in the actual movement of traffic? (2) Was such traffic interstate in character? If his service meets both of these tests he is under the act and the inquiry is at an end.'

''We conclude that the above principles, as quoted, are sound and accept same in review of the point now under consideration.

''If the deceased employee in the case at bar can be said to come within the provisions of the act, it must be under the classification of what is termed as the second group.''

In ruling this point, the respondents said:

''Appellant contends that what the employee was doing at the time he was injured was in aid of movements of cars in interstate commerce and that a failure of the act of the employee would have hindered and delayed such transportation. From our examination of these papers and documents that were being carried by the employee, we conclude that these papers and documents were, as to the cars involved, the record of past events in so far as their movements to their destination was involved, and we find nothing therein from which we can conclude that the cars referred to would be hindered and delayed before reaching their destination and being delivered and their movements interstate terminated.''

There is no conflict between this ruling and our cases relied upon by the relator, which are as follows: McNatt v. Wabash Ry. Co., Co., supra; Sailor v. Mo. Pac. Railroad Co., supra; La Lone v. Terminal Ry. Co., supra; Crecelius v. Chicago, M. & St. P. Ry. Co., supra; and Milburn v. Chicago, M. & St. P. Ry. Co., supra

We are of the opinion our writ herein should be quashed. It is so ordered. All concur.