STATE OF MISSOURI at the relation of ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Relator, v. W. C. HUGHES, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—144 S. W. (2d) 142.

Court en Banc, November 9, 1940.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for relator.

*Frederick W. McCoy* and *Moser, Marsalek & Dearing* for respondents.

1032

TIPTON, J.—This is an original proceeding in certiorari to review the record in the case of Ashby v. Illinois Terminal Railroad Co.,

decided by respondents, Judges of the St. Louis Court of Appeals, and reported in 132 S. W. (2d) 1076. The plaintiff recovered a judgment for personal injuries against relator in the sum of $7500, which judgment was reversed and remanded for a new trial on account of an erroneous instruction. It is the relator's contention that the judgment should have been reversed outright.

The essential facts as found by respondents are as follows:

"The defendant maintains parallel tracks on North Market Street elevated above the street; the north track being used for westbound cars and the south track for eastbound cars. Over the intersection of North Market Street and Broadway the top of the concrete viaduct, on which the tracks were laid, is enclosed and the spaces between the rails and tracks filled with concrete and rock to prevent debris or objects falling to the street below. On the north and south side of North Market Street, and beginning about thirty-seven feet west of the west side of the concrete viaduct over the intersection are platforms alongside the tracks and somewhat higher than the tracks for the use of passengers getting on or off defendants' cars. There is no connection between these platforms, the space between the tracks being open. The north platform is for the use of passengers using defendants' westbound cars, and the south platform for those using the eastbound cars, the entrance being from the street by separate stairways. The plaintiff had ridden the defendants' cars before, but from another station and had never before been in the North Market Street Station, and did not know that there was a separate stairway leading to the north and south platforms. On the day of his injuries he was intending to take one of defendants' eastbound cars. He went up the stairs that were on the north side of the track which placed him on the north platform which was for the use of westbound cars. He immediately discovered that he was on the wrong platform, and he saw the eastbound car which he wanted to take standing alongside the platform on the south side. The plaintiff testifies that he stepped down from the north platform to a plank alongside the north rail of the track and motioned to the motorman on defendants' car and pointed to the east, and that the motorman nodded his head and pointed toward the viaduct and motioned his finger in that direction. There is no evidence that the motorman again actually saw plaintiff before he was struck by the car. But plaintiff says he proceeded east a distance of about thirty-seven feet to the concrete viaduct; crossed over the viaduct to defendants' eastbound track, and turned facing the car at the platform and walked towards it, in order to reach the south platform and board the car, and the motorman was all this while looking to the south and did not see him. When plaintiff was within about fifteen feet of the front end of the car, the car suddenly started forward striking him and throwing him from the track

so that he fell to the street below and received the injuries complained of.

"The motorman testifies that he never saw plaintiff at any time on the north platform or near thereto, and that he never signaled or motioned or nodded his head to him, but was at all times facing the south and watching passengers getting on and off the car; and when all the passengers had boarded the car and while looking at the car doors to the south he started the car, and then looked forward and saw plaintiff in the middle of the track about four feet ahead of the car, whereupon he applied the brakes and stopped as quickly as he could.

"Defendants' evidence shows that over the stairway entrance to the north platform in large letters are the words 'To St. Louis,' and between the tracks and in plain view from the north platform is a sign in large letters with the words 'You are Forbidden to Cross These Tracks;' and at the east end of the north platform a sign which reads, 'Do not Cross Tracks: Danger.'

"There was other testimony corroborative of plaintiff's testimony and the motorman's testimony, but with the view we take of the case it would serve no useful purpose to lengthen the opinion by quoting it."

In ruling the case, the respondents held that "the petition and the evidence is broad enough to bring plaintiff's case within the humanitarian rule, *and the case was submitted to the jury by plaintiff on that theory alone, and so primary negligence as a cause of action, and contributory negligence, went out of the case.*" (Italics ours.) As neither plaintiff nor relator contends the ruling on the instruction that caused the reversal of the case contravenes any ruling of this court, then the only question for our determination is: Does the holding of respondents that the plaintiff's evidence made a submissible case under the humanitarian rule contravene a ruling of this court?

In holding that the plaintiff made a submissible case, the respondents said:

"The motorman testifies that when he first saw plaintiff he was four feet in front of the car, but he also says he had run thirty-four feet before looking forward, and that he could have stopped the car with the appliances at hand in eight to ten feet. Certainly if he had looked he would have seen plaintiff thirty-four feet in front of him, and of course in a perilous position. At least it would be a question of fact for the jury to determine whether the motorman saw plaintiff or by the exercise of ordinary care would have seen him. Plaintiff, under the circumstances was a potential passenger, a licensee or an invitee, and can only recover for injuries received by reason of the motorman failing to exercise ordinary care to avoid injuring him after the motorman discovered his peril or might reasonably have discovered it. [Oatman v. St. Louis Southwestern Railway

Co., 304 Mo. 38, 263 S. W. 139.] . . . . Now when did plaintiff enter the danger zone? When was he first in a position of peril? This is important because he can only come within the humanitarian rule by reason of having been in a perilous position, of which the motorman was aware, or by exercising ordinary care would have known. Certainly he was not in a perilous position of being struck by this car at the moment he stepped from the north platform and on to the north rail of the track, and motioned to the motorman. He was in no danger of being struck by the car until he reached the track the car was on. The motorman may well have understood, as plaintiff contends, that plaintiff intended to walk east a distance of some thirty-five feet to the Broadway viaduct, and there cross to the south track a distance of approximately twelve to fifteen feet, and then continue west a distance of some thirty-five feet to the south platform, where the car was standing. But it would be most unreasonable to say that plaintiff was in a position of peril of being struck by the car when he began that circuitous route to reach the car. The motorman had his duties to perform in the loading and unloading of passengers, and could scarcely be charged with the duty of keeping his eye on this one man to the neglect of the many passengers. The plaintiff may have had ample time to have reached the south platform, or he could have changed his mind and remained at the north platform, or have decided to step back on the platform and return to the street level, and ascend the stairway to the south platform; but in any event he was not in a perilous position of being struck by the car until he turned at the viaduct to walk westward on the track the car was on. Plaintiff testifies that he had proceeded about two-thirds of the distance from the viaduct towards the car when it suddenly started; therefore, he was within fifteen feet of the oncoming car. He was then in a position of imminent peril. If plaintiff's testimony is true, it was the duty of the motorman to look forward in the direction he was to proceed when starting the car, and if he had done so he would have seen the plaintiff within fifteen feet and on the track in front of the car. All these matters were for the consideration of the jury.''

Since the relator has incorporated in his abstract of the record the bill of exceptions, and has not confined the record to the proceedings in this court, we will again repeat the rule in regard to the scope of certiorari proceedings which was stated in the case of State ex rel. Missouri-Kansas-Texas Railroad Co. v. Shain et al., Judges, 343 Mo. 961, 124 S. W. (2d) 1141, l. c. 1142, as follows:

'' ' ' ''On a writ of certiorari to an appellate court, the determination of error, under our decisions, is limited to the finding of a conflict between the Court of Appeals' opinion and the latest ruling opinion of this court on the subject, either as to a general principle of law announced, or as to a ruling under a like, analogous, or similar state

of facts. The purpose of certiorari is to secure uniformity in opinions and harmony in the law. [State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014.]'' [State ex rel. Kroger Grocery & Baking Co. v. Haid et al., 323 Mo. 9, 18 S. W. (2d) 478.]' [State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 85 S. W. (2d) 420, l. c. 421.] 'Nor is it material what we may think of the question involved as an original proposition. Unless the ruling of the Court of Appeals conflicts with a previous ruling of this court upon equivalent or similar facts, we are not authorized to quash its opinion.' [State ex rel. St. Louis-San Francisco Ry. Co. v. Haid, 327 Mo. 217, 37 S. W. (2d) 437, l. c. 438.]''

With these principles in mind, we will proceed to review the alleged conflicts. The relator's first contention is that respondents' holding that plaintiff made a submissible case under the humanitarian doctrine conflicts with our cases of Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116; Frye v. St. Louis, I. M. & S. Ry. Co., 200 Mo. 377, 98 S. W. 566; Crossno v. Terminal Railroad Assn., 333 Mo. 733, 62 S. W. (2d) 1092; and Hilton v. Terminal Railroad Assn., 345 Mo. 987, 137 S. W. (2d) 520. These cases hold that where a motorman has a right to expect a clear track, then there is no duty on him to avoid striking a person on the track until he actually sees him in a position of peril. The rule announced in the above cases shows that the motorman ordinarily had a right to expect a clear track at the place where the plaintiff was struck. However, those cases are distinguishable from the case at bar because in the case at bar there is evidence that the motorman made motions with his head and arms in response to a motion made by the plaintiff, indicating to the plaintiff that he was at the wrong track. In ruling the case, the respondents held that ''the motorman may well have understood, as plaintiff contends, that plaintiff intended to walk east a distance of some thirty-five feet to the Broadway viaduct, and there cross to the south track a distance of approximately twelve to fifteen feet, and then continue west a distance of some thirty-five feet to the south platform, where the car was standing.'' Therefore, under these circumstances it was a question for the jury.

We think the facts in the case at bar are on principle similar to the case of Kame v. St. Louis & San Francisco Railroad Co., 254 Mo. 175, l. c. 196, 162 S. W. 140. A fire occurred in the defendant's railroad yards, and defendant's engineer, by a signal, summoned the inhabitants of the town to its aid. A large number of persons climbed over the standing cars in order to reach the fire, among whom was the plaintiff. While he was so doing the engineer who had sounded the signal backed his locomotive against the cars, causing them to move to plaintiff's injury. In his humanitarian instruction the plaintiff incorporated a finding that his presence was known to defendant's servant who caused the car to move. In ruling the point we said:

"If a reasonable man without seeing, or knowing from eyesight, would have just and reasonable cause to anticipate the presence of people on that train and crossing over to that fire, that fact was equivalent in law to notice, and he must govern himself accordingly in meting out due care. . . . The peculiar facts of this record justify the conclusions that this engineer, having called people to come from the north, and knowing the fact, common to all men, that fire-alarm signals produce a crowd in a town, he may not thereafter (with the crowd present and necessarily in danger in the yards and about the dead cars) act negligently and excuse himself on the theory he did not know the very thing had happened he had tried his level best to bring about, to-wit, a stream of people crossing over to the fire."

We hold that respondents' opinion on these points does not conflict with the above cited cases relied upon by relator.

The relator next contends that respondents' opinion permits the jury to base its verdict upon speculation and conjecture, when there was no evidence to explain what was meant by the motorman's motion, what was in the motorman's mind, and what was in the plaintiff's mind; that it was mere speculation whether the motorman's motion meant to cross the trestle as plaintiff did, or that he meant for the plaintiff to discend the stairs and ascend the stairs at the other track; therefore, respondents' opinion contravenes our opinion in the case of Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S. W. (2d) 313 (and similar cases) which holds that a verdict must be based upon substantial evidence and not upon mere speculation and conjecture.

We do not think it is a question of what the motorman had in mind when he made the motion to the plaintiff, but, rather, what a reasonable, prudent person would interpret the motion to mean. Giving the plaintiff the benefit of every reasonable inference that could have been drawn from the evidence, we think the respondents in holding that it was a question for the jury to determine did not contravene our holding in the Scotten case.

The relator also contends that the opinion of respondents conflicts with our cases of Lackey v. United Railways Co., 288 Mo. 120, 231 S. W. 956, and Bunyan v. Citizens' Ry. Co., 127 Mo. 12, 29 S. W. 842, which hold that an operator of a car has a right to presume a person approaching a track will stop before he goes upon the track in front of an approaching car, until his action shows to the contrary. These cases do not conflict with respondents' opinion because they do not have the element of the operator motioning the person to come across the track.

For the same reason, our cases which hold that a person has a right to presume another person will not do the improper and dangerous act and ignore warning signs are not in conflict with the respondents' opinion.

The last point of conflict made by relator is that the opinion of respondents permits the plaintiff to change his theory of the case from that in the trial court. There is no such point in respondents' opinion and, therefore, it could not conflict with any rulings of this court.

From what we have said, it follows that our writ heretofore issued should be quashed. It is so ordered. All concur.