BURLINGTON NORTHERN RAILROAD, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

BURLINGTON NORTHERN RAILROAD, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

Nos. 71651, 72098.

Supreme Court of Missouri, En Banc.

March 13, 1990.

William A. Brasher, St. Louis, for appellant.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Harry D. Williams, Ray Wagner, Jefferson City, for respondent.

BILLINGS, Judge.

The Director of Revenue ("Director") assessed a use tax on certain equipment purchased and used by Burlington Northern Railroad Company ("Burlington Northern"). The Administrative Hearing Commission affirmed the decision and Burlington Northern appealed. The issue in this case is whether the equipment is exempted as rolling stock for use in interstate commerce. Reversed and remanded with directions.

The basic facts are not in dispute. Burlington Northern is a Delaware corporation doing business in twenty-five states, including Missouri. The Director assessed a use tax and penalties on certain flanged wheel equipment purchased between September 1, 1984, and June 30, 1987, by Burlington Northern. The equipment in issue is characterized as "roadway and work equipment." Burlington Northern paid the assessed amount, under protest, claiming the equipment is exempt from the use tax under *§ 144.030.2(11), RSMo 1986*, because it is rolling stock for use in interstate commerce. The Director contends that because the equipment was not used directly in transporting persons or property in interstate commerce, the exemption does not apply.

■ This case is one of first impression regarding *§ 144.030.2(11), RSMo 1986*, which exempts from state and local sales and use tax "[r]ailroad rolling stock for use in transporting persons or property in interstate commerce...." The Commission's decision must be upheld if authorized by law and supported by competent and substantial evidence upon the record, unless the result is clearly erroneous to the reasonable expectations of the General Assembly. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo.banc 1988); *International Business Machines v. Director of Revenue*, 765 S.W.2d 611, 614 (Mo.banc 1989); *§ 621.193, RSMo 1986*. Tax exemption provisions are to be strictly construed against the party claiming the exemption, *Farm and Home Savings Ass'n. v. Spradling*, 538 S.W.2d 313, 317 (Mo.1976), and the agency's interpretation generally is to be given great weight. *Spudich v. Director of Revenue*, 745 S.W.2d 677, 680 (Mo.banc 1988). However, when an administrative agency's decision is based on the agency's interpretations of law, the reviewing court must exercise unrestricted, independent judgment and correct erroneous interpretations. *Daily*

*Record Co. v. James,* 629 S.W.2d 348, 351 (Mo. banc 1982) citing *St. Louis County v. State Tax Commission,* 562 S.W.2d 334, 337–38 (Mo.banc 1978); *Colony–Lobster Pot v. Director of Revenue,* 770 S.W.2d 705, 706 (Mo.App.1989).

In interpreting the exemption's language, the Administrative Hearing Commission ("Commission") read "use" narrowly to "require that the rolling stock be employed *directly* for the stated purpose—transportation of people and freight in interstate commerce." (Emphasis added.) The Commission, relying on *State v. Shain,* 343 Mo. 961, 124 S.W.2d 1141 (banc 1938), *cert. denied,* 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518 (1939), held the movement of the equipment across state lines was not interstate commerce because there was no "transaction of commerce between states."

■ The equipment is used in all phases of maintenance for Burlington Northern railroad tracks in a nine state region based in Springfield, Missouri. It is used in both capital projects (*i.e.,* programmed replacements of railroad ties between two designated points) and spot maintenance and/or repairs. The equipment moves throughout the nine state area where and whenever it is needed. Some of the equipment is used to transport work material and is capable of carrying at least one crew member, although normally the crew travels by motor vehicle. Burlington Northern operated 1600 to 1700 miles of railroad track in Missouri during the period in issue, which was approximately six to seven percent of its total amount of track. Less than one per cent of Burlington Northern's total revenue is generated by intrastate operations in Missouri.

The term "flange wheel" refers to an iron wheel, the inner edge of which consists of a 1¼ inch high by 1 inch wide iron flangeway encircling the entire circumference of the wheel, designed to ride on railroad tracks. The flanged wheel roadway and work equipment at issue consists of: rail relay equipment used for laying down rail segments; mechanized tie replacement equipment used to insert or extract railroad ties; track servicing and alignment equipment (tampers) used to secure and align track structure; material handling equipment (speed-swings and burros) used to move ties and rails; ballast handling equipment (ballast regulators and track brooms) used to regulate and distribute track and roadbed ballast; track maintenance equipment (air compressors, power track wrenches, and power rail saws) for general maintenance of track; and right-of-way maintenance equipment (brush cutters) used to maintain right-of-way clearance. This equipment runs either on its own power or is pushed or pulled by other means.

The statute has two requirements, the first of which is that the equipment is "railroad rolling stock." In "Finding of Fact Number 3," the Commission referred to the equipment as railroad rolling stock. The Director also conceded in oral argument that the equipment in question was rolling stock in so far as it was equipped with the type of wheel normally found on rolling stock, *i.e.,* flanged wheels. As both parties consider the equipment rolling stock, the Court must determine if the equipment meets the second requirement of the exemption: Is the equipment "for use in transporting persons or property in interstate commerce?" This determination turns upon whether the statute requires the equipment to be used directly or may be indirectly used in interstate commerce. If the Court agrees with the Commission that the statute requires direct use, then "for use" would be construed as "used in" and the exception does not apply.

The primary objective of statutory construction is to ascertain the intent of the General Assembly from the language used and to give effect to that intent if possible. Words are to be given their plain and ordinary meaning when a court interprets a statute. *Rothschild v. State Tax Com'n. of Missouri,* 762 S.W.2d 35, 37 (Mo.banc 1988). Ascertaining and implementing the policy of the General Assembly requires the court to harmonize all provisions of the statute. *20th & Main Redevelopment v. Kelley,* 774 S.W.2d 139, 141 (Mo.banc 1989).

The General Assembly exempted numerous activities and purchases from the sales and use tax in § 144.030 using a variety of terms. Notably, in subparagraphs four and five the General Assembly explicitly exempted certain machinery and equipment "used *directly*" in/for manufacturing. (Emphasis added). Obviously the General Assembly knew how to limit the exemptions to effectuate its purpose. In harmonizing these subparagraphs with the subparagraph in issue, it does not follow that the General Assembly intended to exempt only railroad rolling stock used *directly* in transporting persons and property in interstate commerce without so specifying.

In construing § 144.030.3(4), RSMo 1969, exempting from the sales and use tax certain manufacturing machinery and equipment, the Court said:

> Our statute does not refer to the *identity* of the user, but only to a use for the designated purpose. The determination of *who* made the 'use' here is only introduced into the case because the Director insists that a question of identity is *implied*. The question on our facts is whether the *use* qualifies under the exemption statute upon its own wording. (Emphasis in original.)
>
> \*    \*    \*    \*    \*    \*
>
> We would not be justified in adding a requirement by implication.... ' \* \* \* that the person claiming the exemption be the one who uses the property for the particular purpose specified.' The statute does not state, nor reasonably imply, such a requirement.

*State ex rel. Dravo Corporation v. Spradling*, 515 S.W.2d 512, 515, 517 (Mo.1974).

Although the *Dravo* court was construing another provision of the exemption statute, their reasoning is applicable in this instance. The Director would have the Court construe the statute to require the equipment be used "directly" in interstate commerce. The General Assembly drafted the railroad rolling stock exemption broadly, without defining the specific equipment or types of cars exempted and without limiting the use to that directly involved with commercial transportation. The purpose of § 144.030.2(11) is to promote the use of railroads in transporting persons and property in interstate travel. Construction and maintenance of the railroad tracks is an integral and necessary part of that system. Without the tracks there would be no railway interstate commerce. The Court must construe the statute to effectuate the intent and purpose of the General Assembly. *Com. Fed. Sav. & Loan v. Director of Revenue*, 752 S.W.2d 794, 798 (Mo.banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988).

"Use" is a common word that does not have a technical, legal meaning. *Berry-Kofron Dental Laboratory Co. v. Smith*, 345 Mo. 922, 137 S.W.2d 452, 454 (1940). Examples given of its meaning include: "the act or practice of employing something, to put into action or service, and to carry out a purpose or action by means of". *Webster's New Collegiate Dictionary*, 9th Ed.1983. The equipment in issue is used to carry out the General Assembly's purpose of transporting persons and property in interstate commerce.

Under a similar statute in Kentucky, railroad roadway equipment was found not to be rolling stock used in interstate commerce. Kentucky's statute exempted: "Locomotives or rolling stock, including materials for the construction, repair, or modification thereof, or fuel or supplies for the direct operation of locomotive and trains, used or to be used in interstate commerce." *Louisville & N.R. Co. v. Dept. of Revenue*, 551 S.W.2d 259, 261 (Ky.Ct.App.1977); Ky.Rev.Stat.Ann. § 139.480(1) (Baldwin 1976). Under that statute's language, the equipment in question was not considered rolling stock. However, Kentucky limited the rolling stock exemption to that used for the *direct* operation of locomotives and trains. Missouri's statute has no such requirement or limitation and is therefore distinguishable.

The Commission held "transporting persons or property in interstate commerce" would be mere surplusage if the statute exempted indirect use of the equipment in interstate commerce. The Court disagrees

and calls attention to the Director of Revenue's regulation on railroad rolling stock, *12 C.S.R. 10–3.356, 1989.* The regulation differentiates between railroad rolling stock used in intrastate verses interstate commerce and gives examples of each. The Director of Revenue's own regulation thus recognizes there is more than one type of transaction involving railroad rolling stock.

The Director argues, and the Commission found, that because the equipment does not commercially transport any persons or property, the equipment does not fall within the exemption, as there is no transaction of commerce between the states. The Commission relied on *Shain*, which involved a 1938 workers' compensation claim against the employer, an interstate railroad. The *Shain* court held that an employee crossing a state line was not by himself an instrumentality of interstate commerce. *State v. Shain*, 124 S.W.2d at 1144.

Interstate commerce activities and all phases of those activities are broadly defined by modern courts. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964) (Motel fully local in character can be regulated under the Commerce Clause); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964) (Commerce Clause extended to activities of retail establishments including restaurants, which directly or indirectly burden or obstruct interstate commerce); *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 2773, 65 L.Ed.2d 902 (1980) (Prime contractors for federally funded public works projects can be regulated under Commerce Clause).

The Court finds that the use of this equipment in constructing and maintaining railroad tracks and railways is within the meaning of the statute. "Interstate commerce" must be read in context with the entire statute, which exempts rolling stock "for use in transporting persons or property in interstate commerce." A narrow reading of the word "use" does not comport with the intent of the General Assembly. The statute does not exempt only that rolling stock transporting persons or property that have paid consideration. It exempts any rolling stock "for use" in transporting persons and property. The equipment in issue is rolling stock used to repair and maintain the railroad tracks, an integral part of an interstate system, without which the trains could not run.

The decision of the Administrative Hearing Commission is reversed and remanded with directions to the Director to refund the amount assessed, including interest and penalties paid by Burlington Northern.

BLACKMAR, C.J., HIGGINS, COVINGTON, JJ., and SHANGLER, Special Judge, concur.

ROBERTSON, J., dissents in separate opinion filed.

HOLSTEIN, J., dissents and concurs in dissenting opinion of ROBERTSON, J.

RENDLEN, J., not sitting.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

The statute at issue here—Section 144.030.2(11), RSMo 1986—is ambiguous. The majority opinion amply displays this ambiguity and leads us on a tour of tax exemption statutes using the word "directly" in unrelated contexts. The point the majority attempts to make is that the General Assembly knows the word "directly" and would have used "directly" to modify "used" in the statute if it meant to do so.

There are, of course, other ways to say "directly"; one of those ways is to say, as the General Assembly does in Section 144.030.2(11), that the exemption applies only if the railroad rolling stock is used "in transporting persons or property in interstate commerce." The exemption is dependent upon the use to which the rolling stock is put. I read the statute to limit the exemption to railroad rolling stock that carries persons or property in commerce between the states. Said another way, the exemption applies only to railroad rolling stock carrying things that are themselves in commerce between the states.

As the majority opinion correctly says of the Administrative Hearing Commission's decision, the interpretation I favor is a narrow one. It is, however, consistent with the rules of construction this Court has adopted for use in considering tax exemption statutes. The broad interpretation adopted by the majority is not.

This Court has consistently stated that ambiguities in tax exemption statutes are strictly construed against the taxpayer claiming the exemption. *Missouri Public Service Co. v. Director of Revenue*, 733 S.W.2d 448, 449 (Mo. banc 1987); *Farm & Home Savings Ass'n. v. Spradling*, 538 S.W.2d 313, 317 (Mo.1976). As I read this canon of construction, narrow interpretations of exemption statutes are required. And unlike most canons of construction, this one has no mirror-image canon to which opposing views may hearken. The majority cites the canon, then ignores it.

While there is little empirical evidence to support the conclusion, this Court also presumes that the legislature is aware of our decisions. *Kilbane v. Director of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976). Thus, it can be argued—and it seems to me with greater force than the majority can muster—that the legislature intended a narrow construction of the exemption statute precisely because this Court has heretofore consistently construed exemption statutes narrowly.

Applying these canons of construction, I agree with the conclusion of the Administrative Hearing Commission that the exemption is available only if the railroad rolling stock is used directly for the transportation of people and freight, themselves in interstate commerce. I, therefore, dissent.