Cynthia L. Martin, Judge
Sheryl L. Hallam ("Hallam"), the personal representative of the estate of Joe A. Bell ("Mr. Bell"), appeals from a decision and order entered by the Director ("Director") of the Family Support Division of the Missouri Department of Social Services ("Family Support Division") which affirmed the Family Support Division's rejection of Mr. Bell's application for Vendor level MO HealthNet benefits and imposition *705 of a transferred property penalty in the amount of $607,000. Finding no error, we affirm.
Factual and Procedural Background
On May 15, 2015, Mr. Bell entered a skilled nursing facility. The Family Support Division thereafter determined that Mr. Bell was not eligible for Vendor level MO HealthNet ("MO HealthNet") benefits because Mr. Bell's spouse, Evelyn E. Bell ("Mrs. Bell") transferred assets at her death in a manner that was deemed by the agency to be a disqualifying disposal of assets.
Mr. Bell appealed the Family Support Division's determination to the Director, who entered findings of fact, conclusions of law and a decision and order ("Order") on March 22, 2016, following a telephone hearing. The Director's Order affirmed the Family Support Division's determination. Summarized, the Order included the following factual findings:
1. Mr. and Mrs. Bell entered into a postnuptial agreement on August 19, 2011, which asserted that each spouse had "the power to dispose of their share of the marital assets at their death free of any statutory or other claims of their spouse."
2. On August 19, 2011, Mrs. Bell created a revocable trust, naming Hallam as trustee.
3. On August 25, 2011, Mr. Bell and Mrs. Bell each created a limited liability company ("LLC") in which each served as the sole member. On the same date, the couple transferred into each LLC a one-half interest in the real estate and adjoining farmland that had served as their homestead.
4. The Operating Agreement for Mrs. Bell's LLC provided that on her death, her member interest in her LLC would be transferred to Hallam as the trustee of Mrs. Bell's revocable trust.
5. On December 29, 2013, Mr. Bell transferred the assets of his LLC (his one-half interest in the homestead) to Mrs. Bell. On the same day, Mrs. Bell transferred the assets she had just received from Mr. Bell to Hallam as trustee of Mrs. Bell's trust, with said transfer to be effective on Mrs. Bell's death.
6. On January 1, 2014, Mrs. Bell died. As a result, the real estate which had been Mr. and Mrs. Bell's homestead became an asset held in Mrs. Bell's trust. The trust assets were thereafter distributed pursuant to the terms of the trust to Mrs. Bell's children, including Hallam.
7. On December 14, 2014, Mr. Bell was living in a residential care facility and applied for supplemental nursing care benefits. The notice approving those benefits advised Mr. Bell that the above described transfers would disqualify him from receiving MO HealthNet benefits should he later require skilled nursing care.
8. On May 15, 2015, Mr. Bell entered a skilled nursing facility. On December 29, 2015, the Family Support Division advised Mr. Bell that although he would continue to receive the benefits previously approved, he was disqualified from receiving MO HealthNet benefits until September 15, 2025, because he had transferred property valued at $607,000 without receiving any value in return.
After summarizing the law relevant to determining eligibility for MO HealthNet benefits, the Director found as follows:
The property involved in this case would have been exempt as a resource, because it was the couple's homestead. However, it might have been available for estate recovery if it had not been transferred to Mrs. Bell's children. The transfer *706 from Mr. Bell to Mrs. Bell is not disputed, as transfers to spouses are allowed.
Although there were more complicated transactions involved, the questions to be resolved are 1. Whether a transfer on death provision qualifies as "disposing of" or "transferring" as referred to in the legal authorities; 2. Whether "fair market value" was received for the property; and 3. Whether Mr. Bell can be penalized for a transfer action by his wife.
1. Even though there may not be a regulation specifically stating so, it is clear that a transfer on death provision does "transfer" or "dispose of" property. 2. Perhaps there are ways to receive "fair market value" at the time of one's death, but in this case there was no suggestion of any such. 3. Although the outcome may sometimes be unfortunate, it is well settled that a transfer by one spouse can cause the other spouse to suffer a transfer penalty. For example, if Mrs. Bell had given the property to her children during her lifetime, there would be no doubt that a transfer penalty should be imposed. There is no known authority that creates an exception for transfers at death.
The Director's Order held that the transfer penalty had been properly calculated, and affirmed the Family Support Division's determination. The Director's Order was appealed to the Circuit Court of Vernon County. Subsequently, Mr. Bell died and Hallam was substituted as a party in her capacity of the personal representative of Mr. Bell's estate. The Circuit Court of Vernon County affirmed the Director's Order.
Hallam filed this timely appeal.
Standard of Review
"In an appeal following judicial review of an administrative agency's decision [in a contested case], this court reviews the agency's decision and not the circuit court's judgment."[1] Ringer v. Mo. Dep't of Health & Senior Servs. , 306 S.W.3d 113, 114 (Mo. App. W.D. 2010) (citing Mo. Coal. for the Env't v. Herrmann , 142 S.W.3d 700, 701 (Mo. banc 2004) ). "In so reviewing, we presume that the agency's decision is correct, and the burden to show otherwise is placed on the party challenging the decision." Id. (citing Versatile Mgmt. Grp. v. Finke , 252 S.W.3d 227, 231 (Mo. App. E.D. 2008) ).
Section 536.140[2] governs judicial review of an agency's decision in a contested case, including appellate review. Johnston v. Livingston Cty. Comm'n , 462 S.W.3d 859, 868 (Mo. App. W.D. 2015). We thus examine the Director's Order to determine if it:
(1) Is in violation of constitutional provisions;
(2) Is in excess of the statutory authority or jurisdiction of the agency;
(3) Is unsupported by competent and substantial evidence upon the whole record;
(4) Is, for any other reason, unauthorized by law;
*707 (5) Is made upon unlawful procedure or without fair trial;
(6) Is arbitrary, capricious or unreasonable; [or]
(7) Involves an abuse of discretion.
Section 536.140.2. In doing so, we "examine[ ] the whole record to determine whether there is sufficient evidence to support the decision." Johnston , 462 S.W.3d at 868 (quotation omitted). "We generally will not substitute our judgment for that of the [agency] on factual matters." Id. (quotation omitted). However, "questions of law are matters for the independent judgment of this court." Dep't of Soc. Servs. v. Senior Citizens Nursing Home Dist. of Ray Cty. , 224 S.W.3d 1, 6 (Mo. App. W.D. 2007) (quotation omitted); see also Burlington N. R.R. v. Dir. of Revenue , 785 S.W.2d 272, 273 (Mo. banc 1990) (holding that "when an administrative agency's decision is based on the agency's interpretations of law, the reviewing court must exercise unrestricted, independent judgment and correct erroneous interpretations").
Analysis
Hallam raises a single point on appeal. Hallam does not challenge any of the Director's factual findings, and instead challenges only the Director's legal conclusion that the transfers described in the Order disqualified Mr. Bell from MO HealthNet benefits. Hallam argues that it was error to deny Mr. Bell MO HealthNet benefits because Mrs. Bell's transfer on death of the couple's homestead was not a voluntary disposal of assets by a spouse that disqualifies the surviving spouse from benefits pursuant to 42 U.S.C. section 1396p(c)(1)(A).[3]
"Missouri participates in the Medicaid program...." Couch v. Dir., Mo. State Div. of Family Servs. , 795 S.W.2d 91, 93 (Mo. App. W.D. 1990). Missouri's Medicaid program was created by the Missouri Continuing Health Improvement Act and is called MO HealthNet. Section 208.001.
"Medicaid is a cooperative federal-state program designed to assist the states in providing health care to people who cannot afford it." In re Estate of Bruce , 260 S.W.3d 398, 400-01 (Mo. App. W.D. 2008). "Pursuant to 42 U.S.C.[ ] section 1396a, a state may design a plan to meet its needs and conditions so long as the state operates within the framework set forth by the federal government and does not run afoul of the federal policy." Couch , 795 S.W.2d at 93 (citing Mo. State Div. of Family Servs. v. Barclay , 705 S.W.2d 518, 521 (Mo. App. W.D. 1985) ). Federal policy includes the obligation imposed on states to guard against the use of Medicaid dollars by those who are not truly in need. 42 U.S.C. section 1396p. Consistent with this obligation to abide by federal policy, section 208.010 addresses eligibility for Mo HealthNet generally, and provides specifically at section 208.010.7 that "institutionalized individuals shall be ineligible for the periods required and for the reasons specified in 42 U.S.C. [s]ection 1396p."
The objective of ensuring that only those truly in need receive Medicaid benefits is accomplished in two ways: (i) by imposing a look-back period to ensure that assets are not disposed of for less than fair market value in order to qualify an individual for Medicaid benefits; and (ii) by authorizing the recoupment of paid Medicaid benefits through the estate recovery process. 42 U.S.C. section 1396p(a), (b), and (c). In this case, we are concerned only with whether assets were disposed of *708 during the look-back period for less than fair market value in order to qualify Mr. Bell for MO HealthNet benefits.
42 U.S.C. section 1396p(c)(1)(A) provides:
In order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, the State plan must provide that if an institutionalized individual or the spouse of such an individual ... disposes of assets for less than fair market value on or after the look-back specified in subparagraph (B)(i),[4] the individual is ineligible for medical assistance for services described in subparagraph (C)(i) ... during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E).
42 U.S.C. section 1396a(a)(18) provides that "[a] State plan for medical assistance must ... comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatments of certain trusts." The plain language of 42 U.S.C. section 1396p(c)(1)(A), read in conjunction with section 1396a(a)(18), anticipates that an individual's eligibility for benefits will be influenced by a spouse's asset transfers during the look-back period. The Director so found, and Hallam does not dispute this conclusion.
Though 42 U.S.C. section 1396p(c)(1)(A) generally proscribes the disposition of assets for less than fair market value during the look-back period by an individual or their spouse, 42 U.S.C. section 1396p(c)(2) does describe exceptions. Relevant to this case, 42 U.S.C. section 1396p(c)(2)(A)(i) provides that:
An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that -- (A) the assets transferred were a home and title to the home was transferred to -- (i) the spouse of such individual[.]
Thus, as found by the Director, Mr. Bell's transfer to Mrs. Bell of his one-half interest in the parties' homestead on December 29, 2013, three days before Mrs. Bell's death, did not implicate Mr. Bell's eligibility for MO HealthNet benefits. However, that does not mean that Mrs. Bell's later transfer of the homestead to someone other than Mr. Bell is exempt from consideration in determining Mr. Bell's eligibility.
In addition, 42 U.S.C. section 1396p(c)(2)(C) excepts from disqualifying dispositions of assets transfers where:
[A] satisfactory showing is made to the State ... that (i) the individual intended to dispose of the assets either at fair market value, or for other valuable consideration, (ii) the assets were transferred exclusively for a purpose other than to qualify for medical assistance, or (iii) all assets transferred for less than *709 fair market value have been returned to the individual[.]
Hallam does not contend that Mr. Bell qualifies for the safe haven afforded by 42 U.S.C. section 1396p(c)(2)(C),[5] and thus effectively concedes that the purpose for the layered transactions described in the Order's factual findings was to attempt to qualify Mr. Bell for MO HealthNet benefits.
Mr. Bell was deemed disqualified for MO HealthNet benefits because of Mrs. Bell's transfers of assets. Specifically, the Director concluded that the transfer of the homestead into Mrs. Bell's trust by operation of law upon Mrs. Bell's death via conveyance instruments executed before Mrs. Bell's death were "dispositions" or "transfer" of assets for less than fair market value where the terms of the trust required distribution of the assets to Mrs. Bell's children in exchange for no consideration.
42 U.S.C. section 1396p does not define the phrase "disposes of assets" as used in section 1396p(c)(1)(A). Hallam argues the phrase must be construed to mean only inter vivos transfers--that is transfers of property made during a person's lifetime. Hallam cites no authority for this proposition, and instead relies on her construction of a federal regulation, specifically 20 C.F.R. section 416.1246(a)(1)(A), which provides:
An individual (or eligible spouse) who gives away or sells a nonexcluded resource for less than fair market value for the purpose of establishing SSI or Medicaid eligibility will be charged with the difference between the fair market value of the resource and the amount of compensation received.
Hallam argues that "gives away or sells" applies only to inter vivos transfers. We disagree. The plain language of this regulation makes no reference to inter vivos transfers. Nor does the plain language of this regulation preclude "gifts" or "sales" by use of conveyance instruments that take effect on the occurrence of a future event, such as death. Plainly, Mrs. Bell "gave away" her interest in the homestead by executing instruments that conveyed the homestead to her trust on her death. Though the conveyance instruments executed by Mrs. Bell for this purpose remained subject, presumably, to revocation or amendment during Mrs. Bell's lifetime, the conveyances therein anticipated occurred by operation of law on her death. There can be no meaningful dispute that the instruments executed by Mrs. Bell "gave away" her assets, albeit in a delayed manner that first required the condition of her death. We conclude that transfers on death qualify as a disposition of assets pursuant to 42 U.S.C. section 1396p(c)(1)(A).
Our conclusion is consistent with 42 U.S.C. section 1396p(d) which addresses the treatment of trusts. 42 U.S.C. section 1396p(d)(1) provides that "[f]or purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, ... the rules specified in paragraph (3) shall apply to a trust established by such individual ." (Emphasis added.) 42 U.S.C. section 1396p(d)(2)(A) explains when "an individual shall be considered to have established a *710 trust." Relevant to this case, 42 U.S.C. section 1396p(d)(2)(A)(ii) provides:
[A]n individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will: ... (ii) The individual's spouse.
42 U.S.C. section 1396p(d)(2)(A)(ii) does not limit its application to trusts that are funded during the lifetime of the trust creator, a conclusion that is underscored by the provision's express exclusion of trusts created (and thus funded after death by) a will--commonly referred to as testamentary trusts. Here, it is uncontested that Mrs. Bell's revocable trust was not a testamentary trust. And it is uncontested that Mr. Bell's one-half interest in the homestead was conveyed to Mrs. Bell and, on the same day, conveyed to Mrs. Bell's revocable trust effective on her death. Mrs. Bell's trust qualifies as a trust Mr. Bell is considered to have established.
42 U.S.C. section 1396p(d)(2)(B) continues to provide that "[i]n the case of a trust the corpus of which includes assets of an individual (as determined under subparagraph (A) ) and assets of any other person or persons, the provisions of this subsection shall apply to the portion of the trust attributable to the assets of the individual." 42 U.S.C. section 1396p(d)(3)(A) addresses revocable trusts. 42 U.S.C. section 1396p(d)(3)(A)(i) provides that "the corpus of the [revocable] trust shall be considered resources available to the individual." And 42 U.S.C. section 1396p(d)(3)(A)(iii) provides that "any other payments made from the [revocable] trust shall be considered assets disposed of by the individual for purposes of subsection (c) of this section." 42 U.S.C. section 1396p(d)(3)(B) addresses irrevocable trusts. 42 U.S.C. section 1396p(d)(3)(B)(ii) provides that "any portion of the [irrevocable] trust from which ... no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the [irrevocable] trust ... to be assets disposed by the individual for purposes of subsection (c) of this section." Read together, these provisions require us to conclude that the assets in Mrs. Bell's trust were required, at least in part, to be treated as assets disposed of by Mr. Bell for purposes of 42 U.S.C. section 1396p(c),[6] regardless whether Mrs. Bell's revocable trust retained that characteristic on her death, or became (effectively) an irrevocable trust on her death.
The same result was reached in Bezzini v. Department of Social Services , 49 Conn.App. 432, 715 A.2d 791 (1998). There the court concluded that the transfer of assets by an individual's predeceased spouse through a revocable trust had to be considered in determining eligibility of the individual for Medicaid benefits. Id. at 440-41, 715 A.2d 791. As the court noted, "[t]o conclude otherwise would create an exception to the [M]edicaid qualification rules whereby an applicant could avoid the transfer of assets provisions simply by establishing a revocable trust. This result clearly would be contrary to the legislative purpose underlying the [M]edicaid program." Id. at 441, 715 A.2d 791.
We agree. 42 U.S.C. section 1396p anticipates and provides for the creative estate planning techniques employed by Mr. and Mrs. Bell. Though there is nothing illicit about the estate planning techniques employed *711 by Mr. and Mrs. Bell, they were undertaken subject to the risk that conveyance of the homestead to Mrs. Bell's children would fall within the look-back period. The result reached in this case is no different than it would have been had Mrs. Bell transferred the homestead to her children for less than fair market value during her lifetime. And the result reached in this case is no different than it would have been had the homestead remained titled (at least in part) in Mr. Bell's name until his death, as the Family Support Division could then have turned to applicable estate recovery statutes to recoup from the homestead Medicaid benefits paid to Mr. Bell during his lifetime. 42 U.S.C. section 1396p(a) and (b) ; section 473.398. In each of these scenarios, the purpose of Medicaid is served. See Couch , 795 S.W.2d at 93 (noting that the purpose of Medicaid is to provide "medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care"); H. Rep. No. 99-265, 99th Cong., 1st Sess. 71 (1985) (noting that Medicaid qualifying provisions are "designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available").
We acknowledge Hallam's argument that 42 U.S.C. section 1396p(d)(2)(A), which addresses the treatment of trusts, excludes testamentary trusts, effectively exempting such trusts as transfers that can be subject to a transfer penalty. Hallam suggests that the exclusion of testamentary trusts requires us to conclude that the phrase "dispose of assets" refers only to inter vivos transfers. The Family Services Division concedes that had Mrs. Bell disposed of the homestead by a provision in a will creating a testamentary trust, the transfer of the homestead after her death would not have constituted a disqualifying disposal of assets. The Family Services Division also concedes that had Mrs. Bell disposed of the homestead by a provision in her will (without a testamentary trust), then its regulations take the position the transfer is a disqualifying disposal of assets in the amount of Mr. Bell's statutory elective share pursuant to section 474.160. There is no question this yields an incongruent outcome. However, we are bound by the plain language of 42 U.S.C. section 1396p(d)(2)(A), which excludes testamentary trusts, but not other trusts created before a spouse's death and funded after the spouse's death. The incongruent treatment of revocable trusts funded on death is not sufficient to compel a conclusion that "dispose of assets" includes only inter vivos transfers of assets.
Hallam's point on appeal is denied.
Conclusion
The Director's Order is affirmed.
All concur

In contrast, in an appeal following judicial review of an agency's decision in a non-contested case, we review the judgment of the circuit court, rather than the decision of the administrative agency. State ex rel. Christian Health Care of Springfield, Inc. v. Missouri Dept. of Health and Senior Services , 229 S.W.3d 270, 275 (Mo. App. W.D. 2007). Section 536.010(4) defines a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]"

All Missouri statutory references are to RSMo 2016 unless otherwise noted.

All federal statutory references are the version in effect at the time Mr. Bell was determined to be disqualified for MO HealthNet benefits, unless otherwise noted.

42 U.S.C. section 1396p(c)(B)(i) provides:
The look-back date specified in this subparagraph is a date that is 36 months (or, in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) or (3)(B)(ii) of subsection (d) of this section or in the case of any other disposal of assets made on or after February 8, 2006, 60 months) before the date specified in clause (ii).
The date specified in clause (ii) is, with respect to an institutionalized individual, "the first date as of which the individual both is an institutionalized individual and has applied for medical assistance under the State plan."42 U.S.C. section 1396p(c)(B)(ii)(I).
The Director found in his Order that a 36 month look-back applied to determining Mr. Bell's eligibility for MO HealthNet based on the Family Support Division's On-Line December 1973 Eligibility Requirements Manual, Section 1040.015.25.

42 U.S.C. section 1396p(c)(2)(D) creates an additional opportunity to overcome the disposition of assets for less than fair market value during the look-back period as it permits a State to determine that "the denial of eligibility would work an undue hardship as determined on the basis of criteria established by the Secretary." In this case, the Director's Order reflects that "[i]t was agreed by the parties that there may be an issue of 'hardship,' but that issue is not yet ripe and was not considered in this action."

We do not address, and express no opinion, as to whether the value of the assets attributable to Mr. Bell were calculated as, or should have been calculated as, one-half the fair market value of the homestead. It is not clear from the record how the transfer penalty of $607,000 was calculated, and in any event the amount of the transfer penalty is not challenged by Hallam.